[No. 21068.    In Bank.—June 23, 1894.]

## THE PEOPLE, RESPONDENT, *v.* ELTA STOKES, APPELLANT.

CRIMINAL LAW—JURISDICTION OF OFFENSE—CREATION OF NEW COUNTY—DISMISSAL OF PROSECUTION IN OLD COUNTY—JEOPARDY.—A newly created county has jurisdiction of a defendant charged with the commission of an offense prior to the creation of the new county, and upon territory within its boundary lines; and the fact that at the date of the creation of the new county a prosecution for the offense was pending against him in the old county is no bar to a prosecution in the new county, where the former prosecution was dismissed prior to the commencement of the prosecution in the new county, and no jeopardy had attached prior to the dismissal.

ID.—NEW TRIAL—READING OF NEWSPAPER ARTICLE IN JURY-ROOM.—Where, upon a motion for a new trial in a criminal case, it is shown by the evidence of the officer in charge of the jury that the jurors, after retiring to deliberate upon their verdict, read an article in a local newspaper containing a report of the evidence in the case, including certain evidence which the court had ruled to be inadmissible, and also contain-

CIII. CAL.—13

ing intimations that two of the jurors had been corrupted, and no con-
trary showing is made by affidavits of the jurors, or otherwise, a new
trial should be granted.

Id.—Influence of Jurors—Presumption—Misconduct of Jury.—The
reading by the jurors in a criminal case of a newspaper article published
during the pendency of the trial, which states that "It is currently
reported on the streets that the jury will fail to bring in a verdict, and
that two men will hang the jury; it is also believed that the two men
are known, and that the whereabouts of 'Colonel Mazuma' are also
known," will be presumed to have influenced the jurors, and a new trial
should be granted for misconduct of the jury in reading the article.

Appeal from a judgment of the Superior Court of
Kings County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Horace L. Smith*, for Appellant.

*Attorney General W. H. H. Hart*, and *M. L. Short*, for
Respondent.

Garoutte, J.—The defendant was charged with rob-
bery, alleged to have been committed at Armona, on
March 2, 1893. He was convicted of grand larceny,
and appeals from the judgment and order denying his
motion for a new trial. Upon March 2, 1893, the date
of the alleged crime, Armona was in Tulare county. On
May 29, 1893, the county of Kings was organized out of
a portion of Tulare county, and Armona is now, and
has been since that time, in the county of Kings. The
defendant contends that the superior court of Kings
county had no jurisdiction over the alleged offense, and
for that reason the judgment of conviction is void. He
raised the question in the court below upon motion to
dismiss the prosecution for want of jurisdiction, and on
the hearing of his motion supported it by evidence
showing that before the organization of Kings county
there was commenced in the superior court of Tulare
county a prosecution for the identical offense charged
in this case, which prosecution was pending in said
court at the date of the organization of said Kings
county. The prosecution in Tulare county was dis-

missed prior to the inception of criminal proceedings against the defendant, upon which he was subsequently convicted in Kings county.

Has the accused been tried and convicted in the proper county? We find no case directly in point upon the question here involved. The authorities all agree that the newly created county has jurisdiction of a defendant charged with an offense committed prior to the creation of the new county, and upon territory within its boundary lines. But the question of jurisdiction seems never to have arisen where a prosecution was actually pending at the time the new county was created. As supporting the general principle above stated, see *McElroy* v. *State*, 13 Ark. 708; *Murrah* v. *State*, 51 Miss. 675; *State* v. *Bunker*, 38 Kan. 737; *State* v. *Jones*, 9 N. J. L. 357; 17 Am. Dec. 483; *State* v. *Donaldson*, 3 Heisk. 48; Bishop on Criminal Procedure, sec. 49.

We do not think that the fact of an existing prosecution against the defendant in Tulare county, at the date of the creation of the new county of Kings, causes any exception to the general rule declared in the foregoing authorities. At the time the accused was tried and convicted no proceedings were pending against him in Tulare county, and we are unable to see that he occupied any different position than if there had never been any prosecution begun in that county. Possibly a judgment of conviction under the first prosecution would have been a valid and legal judgment (*United States* v. *Dawson*, 15 How. 467); but, even conceding such to be the fact, it does not follow that the mere circumstance of the existence of a pending prosecution at the date of the creation of the new county (which was subsequently dismissed) is a bar to a second prosecution. Why should it be? In the absence of the first prosecution it is conceded that the new county was the proper county for trial; yet, under the first prosecution it is not claimed that the defendant was either acquitted or convicted, for it is perfectly apparent that jeopardy did not attach. He now stands before the court exactly as if no pro-

ceedings were ever taken against him in Tulare county. If the superior court of that county had no jurisdiction to try the defendant, then beyond question the prosecution and conviction were properly had in Kings county; and if the superior court of Tulare county had jurisdiction of the offense and the defendant, it had jurisdiction for all purposes, and, consequently, it had the power to dismiss the prosecution and discharge the defendant. The fact that the court may have made the order upon insufficient grounds, and thus have committed error in so doing (which is not conceded), is foreign to the question. The dismissal of the case was a matter within the power of the court, and the order of dismissal, as far as the defendant is concerned, was as effectual as though made upon the most incontestible ground. We see no cause of complaint upon his part. He has been deprived of no constitutional right. He has had a speedy and public trial by an impartial jury, selected from the county including the territory upon which the crime was committed. Indeed, the defendant is favored in this respect, for he has been tried by a jury selected from a vicinage much more restricted than if the trial had been had in the county where the original prosecution was begun.

2. It is insisted that a new trial should have been granted, because of misconduct of the jury after they had retired to deliberate upon their verdict. The misconduct charged consisted in the jury reading from a local newspaper an article containing a report of some of the evidence in the case, given at the trial, which included a matter of evidence the court had rejected as inadmissible, and also contained intimations that two of the jurors had been corrupted. · The evidence bearing upon the question was given by the officer in charge of the jury. No contrary showing was made by the affidavits of jurors or otherwise. Indeed, conceding that the article was read by them, they could make no showing that would relieve them of the effects of their own misconduct. A juror is not allowed to say: "I

acknowledge to grave misconduct. I received evidence without the presence of the court, but those matters had no influence upon my mind when casting my vote in the jury-room." The law, in its wisdom, does not allow a juror to purge himself in that way. It was said in *Woodward* v. *Leavitt*, 107 Mass. 466; 9 Am. Rep. 49: "But, where evidence has been introduced tending to show that without authority of law, but without any fault of either party or his agent, a paper was communicated to the jury which might have influenced their minds, the testimony of the jurors is admissible to disprove that the paper was communicated to them, though not to show whether it did or did not influence their deliberations and decision. A juryman may testify to any facts bearing upon the question of the existence of the disturbing influence, but he cannot be permitted to testify how far that influence operated upon his mind." There are intimations in the cases of *People* v. *Goldenson*, 76 Cal. 328, and *People* v. *Murray*, 85 Cal. 350, tending to oppose the foregoing views, but they do not express the law.

The article of which complaint is made had the following heading:

"*The Stokes Case—Third Day of the Armona Robbery Trial—Undersheriff Hall Testifies about the Fifty-Dollar Silver Certificate—A Condensed Report of the Trial—A Hung Jury Intimated—Colonel Mazuma's Presence.*"

The article concludes as follows: "It is currently reported on the streets that the jury will fail to bring in a verdict, and that two men will hang the jury. It is also believed that the two men are known, and that the whereabouts of 'Colonel Mazuma' are also known."

It is exceedingly unfortunate that a newspaper should publish such an article pending the trial of an important criminal case. Newspaper comments of this character are well calculated to interfere with the due and proper administration of justice. The jurors should not have read the article. The newspaper should not have published it. The publication of such articles dur-

ing the pendency of important trials serves no good purpose, but, on the contrary, tends to impede and adulterate the stream of justice. This article results in giving a defendant a new trial in an important case, for we discern no other ground for a reversal of the cause, save the one now under consideration.

We will now pass to an examination of the law. In speaking to this question, Mr. Hayne, in his very valuable work upon New Trials and Appeals, after an exhaustive review of both principle and authority, at section 27, says: " The rule laid down by the foregoing cases, viz: that where an irregularity is shown which may have influenced the result, it is for the successful party to show that as a matter of fact it did not, rests upon sound principles. Corrupt and other improper actions are usually done in secret, and are carefully covered up, and it would always be difficult, and in many cases impossible, for the moving party to show that the irregularity was in fact followed by some corrupt or otherwise improper influence, while it is comparatively easy for the juror to explain an apparently doubtful act, if it be innocent. . . . . The rule above stated is sustained by high authority. The views of such jurists as Shaw, Sharkey, Field, and Clifford are not to be lightly put aside. In California, the cases of *People* v. *Backus*, 5 Cal. 276, and *People* v. *Brannigan*, 21 Cal. 337, and *People* v. *Turner*, 39 Cal. 370, seem to conclusively settle the matter. The rule, however, like every other rule, is to have a reasonable and not a forced application. It does not apply where there is only a bare possibility of the result having been affected. The case must be such that the court cannot determine with any reasonable certainty whether the result was affected or not." As directly supporting the author's text and the views of this court we cite: *Commonwealth* v. *Roby*, 12 Pick. 519; *Hare* v. *State*, 4 How. (Miss.) 193; *McCann* v. *State*, 9 Smedes & M. 468; *Keenan* v. *State*, 8 Wis. 138; *Commonwealth* v. *Wormley*, 8 Gratt. 714; 56 Am. Dec. 162; *State* v. *Prescott*, 7 N. H. 288; *People* v. *Backus*, 5 Cal.

276; *People* v. *Brannigan*, 21 Cal. 337; *People* v. *Turner*, 39 Cal. 370; *People* v. *McCoy*, 71 Cal. 395.

The remaining question presented is, Was the article one not calculated to prejudice the result of the trial? Is it apparent that it could have had no influence upon the verdict? If not, the defendant should be awarded a new trial, for he has not yet had that fair and impartial trial to which he is entitled by constitution and statute. It is said in *People* v. *McCoy*, 71 Cal. 395: "There is no doubt, however, that the reading of newspapers by jurors while engaged in the trial of a cause is an inattention to duty which ought to be promptly corrected, and, if the newspaper contains any matter in connection with the subject matter of the trial which would be at all likely to influence jurors in the performance of duty, the act will constitute ground for a motion for a new trial. . . . . If it be proved as a fact, or may be presumed as a conclusion of law, that the verdict may have been influenced by information or impressions received from sources outside of the evidence in the case, such a verdict is subject to be set aside on a motion for a new trial." (See, also, *Carter* v. *State*, 9 Lea (Tenn.) 440. Without considering that portion of the article containing a misrecital of the evidence we pass to the extract quoted above. That extract, in effect, states that two men will hang the jury, and that their identity is known to the public. If there were men upon the jury who were wavering as to the character of their verdict it is impossible for this court to say that this article, when read in the jury-room, did not have the effect of directing their final action. We cannot say from an inspection of the record that the reading of it by the jurors had no effect upon the character of the verdict rendered. We cannot say that the verdict of guilty is based wholly upon the evidence introduced at the trial.

The article goes to still greater lengths, and intimates that attempts are being made to corrupt the jury. It appears that the term "Colonel Mazuma" not only

does not indicate some gentleman with a military title, but it does not even refer to a person at all. We fail to find the term mentioned by our lexicographers, but understand it to be a modern provincialism, probably emanating from the daily press, and used when referring to the corrupt application of money in the accomplishment of certain ends. If these jurors understood this term with the signification thus attached to it, it of itself furnished ample material to demand a retrial of the case. We see no other error in the record. As was said in *People* v. *Mitchell*, 100 Cal. 328: "It is unfortunate for the jury system, and for the cause of justice, that such episodes should occur in the trial of causes, but the evil will be soonest suppressed by wiping out verdicts rendered under such circumstances."

It is ordered that the judgment and order be reversed, and the cause remanded for a new trial.

FITZGERALD, J., HARRISON, J., McFARLAND, J., and VAN FLEET, J., concurred.