[S. F. No. 5016. Department One.—October 25, 1909.]

CHARLES KIMIC, Respondent, v. SAN JOSE-LOS GATOS INTERURBAN RAILWAY COMPANY (a Corporation), and SAN JOSE AND SANTA CLARA COUNTY RAILROAD COMPANY (a Corporation), Defendants; SAN JOSE AND SANTA CLARA COUNTY RAILROAD COMPANY, Appellant.

NEGLIGENCE—STREET RAILROAD—COLLISION BETWEEN CARS OF DIFFERENT COMPANIES—PRESUMPTION OF NEGLIGENCE.—Where a passenger on the car of one street-railway company is injured as the result of a collision with a car of another company, no presumption of negligence on the part of such other company arises from the mere fact of the collision.

ID.—LIABILITY FOR JOINT ACT OF NEGLIGENCE.—Where the negligence of the managers of both vehicles contributed to the injury, the party injured may recover from the proprietors of either or both.

ID.—NEGLIGENCE WHEN QUESTION OF FACT.—Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence.

ID.—NEGLIGENCE OF MOTORMAN IN APPROACHING CROSSING—FAILURE TO SLOW DOWN OF CAR HAVING RIGHT OF WAY.—It cannot be held,

as a matter of law, that a motorman having under his absolute control an electric car of great power and weight, acted as an ordinarily prudent man and with the exercise of ordinary care, in approaching the intersecting track of another street-railroad, while a car of such other road was approaching the intersection on a level track and was within a few feet thereof and in plain sight, in such manner and at such a rate of speed that he could not stop his car in time to avoid a collision in the event that the other car continued to advance upon its track to the intersection; and this is so, even though he knew that under an established custom of the two roads, his car had the right of way and the other car should stop and allow him to .pass, and even although the other car had slowed down.

ID.—SUFFICIENT EVIDENCE OF NEGLIGENCE—PASSENGER ON OTHER CAR.— Evidence of such conduct on the part of the motorman of the car having the right of way is a sufficient showing of negligence to sustain a verdict in favor of a passenger on the other car who was injured as the result of a collision between the cars.

ID.—AMOUNT OF DAMAGES.—*Kimic v. San Jose-Los Gatos Interurban Ry Co., ante,* p. 273, approved, to the effect that the verdict in favor of the plaintiff is not excessive.

ID.—INSTRUCTION—DAMAGES FOR POSSIBLE OR PROBABLE INJURIES.—In an action to recover damages for personal injuries, where the evidence is conflicting as to whether the plaintiff was then afflicted with a certain disease by reason of the injuries received, and, if so as to the permanency of such condition, an instruction to the effect that the jury were the sole judges as to the extent and severity of the injuries, the then condition of the plaintiff in the respect specified and the probability of its permanency, and that in all these matters the burden was on the plaintiff to establish his case by a preponderance of the evidence, which contains no intimation that damages might be awarded for future losses which were only possible or probable and not reasonably certain to ensue, is not erroneous.

ID.—EARNING CAPACITY OF PLAINTIFF—EVIDENCE.—In such an action, after the plaintiff had testified without objection that his time and business and earning capacity before the accident was a certain amount a day, and that he had not been able to attend to business since the accident, it is not a prejudicial error to permit him to answer in the negative to a question whether since the accident he had been able to earn that amount in his business.

ID.—EVIDENCE OF ORDERS OF COMPANY TO MOTORMAN—CROSS-EXAMINATION.—In an action against two railroad companies to recover damages for personal injuries occasioned to a passenger as the result of a collision between their respective cars, after a motorman of the car other than the one on which the plaintiff was riding, who was called by the plaintiff as a witness, had testified fully ·on direct examination as to the custom between the two companies under which his employer's cars had the right of way, evidence of the

orders he may have received from his company respecting the right of way at the crossing is incompetent and not proper cross-examination, and the sustaining of an objection to such evidence, interposed by the co-defendant alone, is proper.

ID.—COURT MAY EXCLUDE INCOMPETENT EVIDENCE.—Even in the absence of any objection, the court has the right to exclude proposed evidence which is incompetent and inadmissible for any purpose.

ID.—RES GESTÆ—STATEMENTS MADE BY MOTORMAN AFTER ACCIDENT.—Where such motorman, on his direct examination, had testified that some seven or eight minutes after the collision he "spoke" to the man on the other car, and that he had not discussed the accident with any one since its occurrence, and on cross-examination, admitted that immediately after the accident he had discussed the matter with the motorman of the other car, it is not proper, on cross-examination, to question him as to the substance of such conversation, if the object of the proposed evidence was not intended for purposes of impeachment. Such conversation was not part of the *res gestæ,* and was incompetent and inadmissible as against the co-defendant.

ID.—STATEMENT AS TO CAUSE OF ACCIDENT.—A statement by the motorman of the car on which the plaintiff was a passenger as to the cause of the accident, made about seven minutes after its occurrence, is hearsay and not part of the *res gestæ,* and not admissible against his employer.

ID.—GRADUATE NURSE—EXPERT—EVIDENCE AS TO WEAKNESS OF PATIENT.—A graduate nurse, who has been constantly engaged in the calling of a professional nurse for five years, may testify as an expert that the reason why he gave certain stimulants to his patient was because the patient was weak.

ID.—EVIDENCE AS TO CONVERSATION WITH PLAINTIFF AND THIRD PERSON—CROSS-EXAMINATION—IMMATERIAL EVIDENCE. — Such nurse, on direct examination, testified from memory to the condition of the plaintiff while he attended him, and on cross-examination by the appellant company he testified that he had burned his charts, which he always did unless the patient wanted them, and that when he left the plaintiff's home he asked him if he wanted the charts, and that the plaintiff said he would not need them as there would be no lawsuit. On redirect examination by plaintiff, he testified without objection as to the remainder of the conversation between himself and the plaintiff, saying that the plaintiff told him therein that the reason there would be no lawsuit was that the vice-president of the co-defendant had promised to do the right thing by him and give him everything he wanted, and he thought he would do so. He further testified that such vice-president had called on the plaintiff while he was nursing him. On recross-examination by the appellant he was asked if he, the witness, was present when the original conversation between the plaintiff and such vice-president took place. *Held,* that the sustaining of an objection to such question

was not erroneous; that the substance of such conversation between the plaintiff and such vice-president was not competent except in so far as it might tend to affect the weight of the evidence of the witness as to his reason for destroying the charts, and that as bearing on that matter, its exclusion was not prejudicial.

ID.—MEDICAL EVIDENCE—SHAMMING BY PLAINTIFF.—Where a medical witness for the plaintiff had testified that he had no opinion to offer as to whether the plaintiff was now shamming any symptoms, it is not error to permit the plaintiff, in explanation of such testimony, to elicit further evidence from the witness that he had no intention to intimate that the witness was shamming, but that he meant that from a medical standpoint it was difficult and probably impossible to say whether or not he was shamming.

ID.—PERMANENCY OF INJURY.—It was permissible for a medical witness for the plaintiff to testify that in the case of a man of sixty-two years of age, which was the age of the plaintiff, the chances were that the injury complained of would be permanent if a muscle or a blood vessel were ruptured, or if there were an extravasation of blood amounting to a quart, as to all of which there was evidence.

ID.—ERRONEOUS EVIDENCE OF DAMAGES CURED BY REMISSION FROM VERDICT—NEW TRIAL.—The admission of indefinite evidence as to the amount of the medical expenses incurred by the plaintiff by reason of the injuries, is cured, if the plaintiff remits from the verdict the amount of such expenses, as a condition to the denial of a new trial.

ID.—NEW TRIAL—AFFIDAVITS ON INFORMATION AND BELIEF—MISCONDUCT OF JURY.—An affidavit in support of a motion for a new trial on the ground of the misconduct of the jury, which is made solely on information and belief, is unavailing.

ID.—AFFIDAVITS OF JURORS—IMPEACHMENT OF VERDICT.—An affidavit of a juror cannot be received to show misconduct of the jury, in order to impeach their verdict, except upon the single ground that the verdict was the result of a resort to the determination of chance. The same rule is applicable to the affidavits of third persons, detailing subsequent conversations with jurors tending to impeach their verdict.

ID.—PREJUDICIAL INFLUENCE OF KNOWLEDGE ACQUIRED BY MISCONDUCT.—Jurors cannot be heard to deny the prejudicial influence on their minds of knowledge acquired by misconduct. Affidavits of jurors may be used to disprove or explain the alleged misconduct, but cannot, admitting the misconduct, be used to show that the verdict was not influenced thereby.

ID.—IMMATERIAL MISCONDUCT OF JURORS.—A new trial will not be granted on account of misconduct of the jury, where such misconduct was of such trifling nature that it could not in the nature of things have been prejudicial to the moving party, and where the fairness of the trial has been in no way affected by such impropriety, the verdict will not be disturbed.

ID.—COLLISION OF STREET CARS AT CROSSING—UNAUTHORIZED INSPEC-
TION OF BRAKES BY JURY.—In an action involving the question of
the liability of two street railroads for a collision of their re-
spective cars at a crossing, in which no issue was involved re-
specting the sufficiency of the mechanism of the brake of the
appellant's car, it is not misconduct warranting a new trial for the
jury, while on their way to visit the scene of the accident, under an
order of court limiting their inspection to the crossing, to make a
cursory examination of the brake mechanism of the appellant's car
on which they were riding.

ID.—REMARK BY JUROR DURING INSPECTION—CAUSE OF ACCIDENT—
NON-ASSUMPTION OF PREJUDICE.—In such an action, a casual
remark made by one of the jurors during the inspection at the
time a car of the appellant was approaching the crossing, to the
effect that "that is the way the plaintiff was injured, if the tracks
were wet he could not have stopped his car before said crossing,"
although reprehensible and in violation of the instructions of the
court, cannot be assumed to have influenced the other jurors who
may have heard it; and the trial court was warranted in assuming,
so far as concerned the juror making the statement, that it did not
necessarily show a prejudiced mind, or a desire to influence the
other jurors, or to affect the juror's mind in reaching a verdict.

APPEAL from a judgment of the Superior Court of Santa
Clara County and from an order refusing a new trial.   John
E. Richards, Judge.

The facts are stated in the opinion of the court.

E. M. Rea, and Corbet & Selby, for Appellant.

Leo B. Archer, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant San
Jose and Santa Clara County Railroad Company (hereinafter
designated as the appellant), from a judgment in favor of
plaintiff against it and its co-defendant, San Jose-Los Gatos
Interurban Railway Company (hereinafter designated as the
Interurban Company), for damages for personal injuries, and
from an order denying its motion for a new trial.   The
general facts of the case are stated in the opinion filed Sep-
tember 20, 1909, in the matter of the appeal of the Interurban
Company from the same judgment and from an order denying
its motion for a new trial.   (*Ante,* p. 273, [104 Pac. 312].)

1. At the close of plaintiff's case, appellant made a motion for a nonsuit upon the ground that plaintiff had failed to prove any negligence on appellant's part. The granting of this motion was objected to by both plaintiff and the Interurban Company, and the motion was denied. It is urged that this ruling was erroneous. We are of the opinion that the evidence introduced by plaintiff was sufficient to warrant the denial of the motion. It is true that as the plaintiff was a passenger on the Interurban Company car and not on appellant's car, no presumption of negligence on the part of appellant arose from the mere fact of collision. (*Harrison* v. *Sutter St. Ry. Co.*, 134 Cal. 549, [66 Pac. 787]; *Tompkins* v. *Clay St. R. R. Co.*, 66 Cal. 163, [4 Pac. 1165].) But there was evidence as to other facts that warranted the trial court in concluding that there was a sufficient case on the question of appellant's negligence to go to the jury.

It may be conceded that the evidence showed very clearly that appellant's cars had the right of way over said crossing, and that it was the duty of the Interurban car operatives to come to a stop before crossing Tenth Street whenever one of appellant's cars was approaching, and to allow such car to pass before crossing. The well-established custom of appellant's cars was to slow up on approaching the crossing and then to cross without stopping. Appellant's motorman, W. B. Plimpton, called by the plaintiff, testified that in conformity to this custom on the occasion in question he did shut off his current and pull back on his brake when approaching the crossing and that he was going at the rate of four or five miles an hour when, fifteen feet from San Carlos Street, he saw the Interurban car standing still on the east side of the crossing, and only then released his brake and threw on his current, and at that moment the Interurban car shot out in front of him at full speed. He said that he immediately shut off his current and put on his brake but that it was impossible to stop in time. His conductor, also called by plaintiff, corroborated him by testifying that the car slowed down to about four miles an hour when near San Carlos Street, that when it was about twenty feet from the crossing he saw the Interurban car standing on the east side of Tenth Street, and that this appellant's motorman turned on his current and dashed ahead. But there was other testimony on the part of witnesses

of plaintiff from which the jury might properly conclude that the Interurban car, which was that day being operated by a new motorman and a new conductor, did not come to a stop before attempting to cross at Tenth Street. It did slow down to allow a passenger, the only passenger other than plaintiff, to alight, but he stepped off the car before it stopped, and testified that he did not know whether it stopped after he alighted. The plaintiff testified quite clearly and positively that this passenger prepared to alight by getting down on the step with his hand on the bar, that the car slowed down and he swung off while it was moving slowly, that just as he swung off the conductor rang the bell and the car shot ahead very fast, and that the motorman of the Interurban car did not look to the north at all but was apparently engrossed in the passenger who was alighting. There was nothing improbable in this evidence, and it was sufficient to support a conclusion on the part of the jury that the Interurban car did not come to a stop at or near Tenth Street until stopped by the collision.

Appellant's car struck the Interurban car, a car thirty-three feet long, near the front wheel of the rear truck, knocking such rear truck some two feet off the track. Appellant's car weighed about fifteen tons. The motorman of appellant's car testified that he saw the Interurban car approaching on San Carlos Street when it was one hundred feet from the crossing. The crossing at Tenth Street and San Carlos Street is a level crossing and both of said streets are level. It had been raining on the day of the accident and the tracks were a "little damp" by reason thereof. Appellant's car was being operated on the easterly of its two tracks on Tenth Street, the track nearest the Interurban car approaching on San Carlos Street. The accident occurred between 12 and 1 o'clock of the afternoon. There was nothing to indicate whether any warning signal was given by either car on approaching the crossing.

In all this evidence there was certainly sufficient to support a conclusion that appellant's motorman having under his absolute control an electric street car of great power and weight, approached the intersecting track of another street railroad, while a car of such other road was approaching such intersection on a level track and was within a few feet thereof

and in plain sight, in such manner and at such a rate of speed that he could not stop his car in time to avoid a collision in the event that the other car continued to advance upon its track to the intersection. Would an ordinarily prudent man having a due regard for the safety of those who were passengers on the other car and as to whom he was held to the exercise of ordinary care, do this under like circumstances, even though he knew that under an established custom of the two roads, his car had the right of way and the other car should stop and allow him to pass, and even although the other car had slowed down? We do not feel that this question can be answered in the affirmative as a matter of law, and if it cannot be so answered it cannot be said as a matter of law that he was not negligent. "The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence. . . . If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left to the jury. Our ideas as to what would be proper care vary according to temperament, knowledge, and experience. A party should not be held to the peculiar notions of the judge as to what would be ordinary care. That only can be regarded as a standard or rule which would be recognized or enforced by all learned and conscientious judges, or could be formulated into a rule. In the nature of things, no such common standard can be reached in cases of negligence, where reasonable men can reach opposite conclusions upon the facts." (*Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 656, 663, [62 Pac. 308, 64 Pac. 993], and cases there cited. See, also, *Seller* v. *Market St. Ry. Co.*, 139 Cal. 268, 271, [72 Pac. 1006].) A reasonable man might well conclude that under the circumstances shown here, the exercise of ordinary care required appellant's motorman to approach the crossing in such a manner that he could stop in time to avoid a collision if the other car did not stop, and that if he did not do this he was guilty of negligence as to plaintiff, regardless of whether the motorman of the Interurban car was also guilty of negligence. Where the

negligence of the managers of both vehicles contribute to the injury, the party injured may recover from the proprietors of either or both. (*Tompkins* v. *Clay St. R. R. Co.,* 66 Cal. 163, [4 Pac. 1165].) It might reasonably be concluded that in the exercise of ordinary care appellant's motorman could not act upon the assumption that the moving Interurban car would be stopped before reaching the intersection, notwithstanding that he had the right of way, and that until it had actually come to a full stop he was called upon to assume that there was danger of a collision if he went rapidly ahead, and to so manage his car as to avoid the same. Of course, if he neglected to observe that the Interurban car had not stopped when he could have observed that fact by the exercise of ordinary care, he was negligent in failing to observe it and in acting accordingly.

2. It is claimed that the evidence was insufficient to sustain the conclusion of the jury that there was negligence on the part of appellant. This claim requires very little notice in view of our discussion of the alleged error in denying the motion for a nonsuit. The case of the plaintiff was strengthened on the question whether or not the Interurban car stopped before coming to the crossing by the testimony of the motorman thereof, called as a witness by the Interurban Company, who testified that the car did not stop, but simply slowed down, while the case of appellant was strengthened by the testimony of a passenger on its car, who testified that the Interurban car did stop. There was also the testimony of the motorman and the conductor of the Interurban car to the effect that as they reached the crossing they for the first time saw appellant's car one hundred and twenty-five to one hundred and fifty feet away coming at a rate of fifteen to twenty miles an hour. There was, taking all the testimony on this point, simply a conflict of evidence. For the reasons stated in discussing the motion for a nonsuit, there was sufficient evidence to support the verdict.

3. It is contended that the damages awarded are excessive. The verdict was for seven thousand dollars. Six hundred dollars was remitted from this in consequence of the order of the trial court on motion for new trial, making the judgment one for sixty-four hundred dollars. The record on this appeal shows practically the same evidence on the question

of damage as did the record on the appeal of the other defendant. (*Ante,* p. 273, [104 Pac. 312].) This question was fully discussed in the opinion filed on that appeal, and it was concluded that it could not be held that the damages awarded were excessive in amount. For the reasons stated in that opinion the same ruling must be made here.

4. It is contended that the trial court erred in giving the following instruction at the request of the other defendant:—

"He (plaintiff) also claims that the physical injuries in question caused a condition of disease known as neurasthenia or traumatic neurosis and that such condition is possibly, or probably permanent. You are the judges of the fact as to the extent and severity of the injuries sustained by the plaintiff, and also as to the fact of the existence of neurasthenia, or traumatic neurosis, as well as of the degree of such disease, and of the probability of its permanency. If you find that the injuries received by plaintiff in the collision in question did not cause neurasthenia or traumatic neurosis, you will not allow plaintiff any damages because of the existence of such disease." The instruction then went on to say that the burden was on the plaintiff to show such result from the injuries and that if he failed to do so he could not recover damages therefor. The theory of learned counsel for appellant apparently is that the jury were practically told by this instruction that they might allow damages for such future loss as they thought might "possibly or probably" follow on account of the injuries, the true rule in this regard being, as stated in *Melone* v. *Sierra Ry. Co.,* 151 Cal. 117, [91 Pac. 522], that plaintiff can recover only "such damages as by the evidence it is *reasonably certain* he will suffer in the future." We do not so construe the instruction. It was not an instruction on the subject of damages at all. The testimony of the witnesses was conflicting as to whether the plaintiff was then afflicted in the manner stated by reason of the injuries received, and, if so, as to the permanency of such condition. The whole purpose and effect of this instruction was to impress upon the jury that they were the sole judges as to the extent and severity of the injuries sustained, the then condition of the plaintiff in the respect specified and the probability of its permanency, and that in all these matters the burden was on the plaintiff to establish his case by a preponderance of evi-

dence. It was nowhere intimated to the jury that they might award damages for future losses which were only possible or probable and not reasonably certain to ensue. The only instruction as to the damages that might be awarded was carefully limited, so far as future damage was concerned, as follows: "If the injury has impaired the plaintiff's power to earn money in the future, such sum as will compensate him for such loss of power." At the request of appellant the court instructed the jury that they could allow "only such actual damages, as the evidence shows to a reasonable certainty, he has sustained by reason of the accident," and that "if you find that the injury is of a permanent nature, then plaintiff is entitled on account of the damages, to compensation; that is to such sum as will compensate him for his loss of power to earn money in the future."

5. Plaintiff having testified without objection that his time and business (which was a "wall-paper business") was worth before the accident from ten to twelve dollars a day, that his earning capacity before the accident was from ten to twelve dollars a day, and that he had not been able to attend to business since the accident, was asked: "Since the accident have you been able to earn that amount of money in your business?" An objection to this question was overruled, and the witness answered, "I have not." If we assume this ruling to have been technically erroneous, we nevertheless cannot hold it prejudicial. The answer of the witness to the question did not intimate any amount by which his earning capacity in the business had been decreased, but simply that it had been decreased, that he had not been able to earn the full amount stated. So far as any specific damage was concerned, which under the instructions of the court must be shown by the plaintiff before any recovery therefor could be had, plaintiff's case practically stood after the answer the same as it did before, upon the evidence that had already been admitted without objection. The answer did not materially add to the effect of such previous testimony.

6. Appellant's motorman, called by plaintiff as a witness, testified fully on direct examination as to the custom between the two companies under which appellant's cars had the right of way. He fully substantiated the claim of appellant in regard thereto. No testimony was given by him on direct

examination as to any statement or order made or given him by any officer of the appellant in regard to the right of way at such crossing. On cross-examination by appellant's counsel he was asked: "What orders did you have from your office in regard to the right of way at that crossing?" This was objected to by the other defendant as incompetent, irrelevant, immaterial, and not proper cross-examination. No objection was interposed by plaintiff. The objection was sustained. We cannot conceive of any theory upon which it can be held that the supposed evidence was competent for any purpose. It was not cross-examination regarding any matter covered by the direct examination, and was simply a plain attempt to bring before the jury statements and instructions which had been made and given by appellant to its servant out of the hearing of plaintiff and the other defendant. Even if there had been no objection upon the part of any party to the question, the proposed evidence being incompetent and inadmissible for any purpose, the court had the right to exclude it of its own motion. (See *Davey* v. *Southern Pacific Co.*, 116 Cal. 330, [48 Pac. 117]; *People* v. *Wallace*, 89 Cal. 166, [26 Pac. 650]; *Parker* v. *Smith*, 4 Cal. 105.) It is therefore unnecessary to consider whether the objection made by appellant's co-defendant alone was effectual for any purpose. However, we can see no reason why it was not entitled to make and insist on the objection if the question called for evidence incompetent for any purpose.

7. On his direct examination appellant's motorman testified that some seven or eight minutes after the collision he "spoke" to the men on the other car. He further testified that he had not discussed the accident since its occurrence with any one. On cross-examination by appellant he was asked if it was not a fact that immediately after the accident he discussed this matter with the motorman of the Interurban car and answered "Yes." He was then asked: "What did you say to that motorman?" and an objection on the part of the other defendant that the same was not proper cross-examination was sustained. This ruling was correct. It was not suggested or intimated to the trial court that the object of the proposed evidence was to impeach the witness by showing any statement by him to the Interurban motorman which was inconsistent with his present testimony as to the circumstances of

the accident, and, of course, it is apparent that there was no such object. The witness had testified as favorably to appellant's cause as could be desired, and according to his testimony the negligence was wholly on the part of the Interurban car. The question was not proper cross-examination. The only possible object thereof was to elicit from the witness evidence that some seven or eight minutes after the accident he had made a statement to the other motorman favorable to his own employer and unfavorable to the other defendant as to the cause of the accident, which statement was in no way inconsistent with his present testimony. Under elementary rules, such statements, constituting no part of the *res gestæ*, were incompetent and inadmissible as against the other defendant.

8. On his direct examination the same witness testified that about seven minutes after the accident, the motorman of the Interurban car made a statement as to the cause of the accident. He was then asked what that statement was, and an objection of the other defendant that the same was not a part of the *res gestæ* in that it occurred after the transaction and was clearly hearsay and not binding on the Interurban Company was sustained. The proposed evidence was clearly incompetent. The statements of the Interurban motorman proposed to be shown constituted no part of the *res gestæ* and any statement made by him as to the cause of the accident which was not a part of the *res gestæ* was not admissible against his employer or for any other purpose of which we can conceive. (See *Luman* v. *Golden etc. Co.*, 140 Cal. 700, 709, [74 Pac. 307], and cases there cited.)

9. It is conceded in the reply brief of appellant that a motion to strike out certain evidence given by Doctor Saph was too general and was properly denied.

10. L. A. Mcquaide, a graduate nurse of five years' experience, who attended plaintiff for four weeks following the accident, was a witness in his behalf. He testified that on both the first and second days he gave the patient some strychnine and brandy. He was asked why this was given, and over objection of defendant that this called for expert testimony which the witness had not shown himself qualified to give, answered that it was because he was weak. There can be no doubt that one who is shown to be a graduate nurse and to have been constantly engaged in the calling of a pro-

fessional nurse for five years may properly be called upon as an expert to give evidence of the character of that elicited by the question asked. (See, generally, *Estate of Toomes,* 59 Cal. 509, 514, [35 Am. Rep. 83].)

11. The nurse on direct examination testified to the condition of plaintiff during the time he acted as nurse, from memory. On cross-examination by appellant he testified that he had burned his charts, that he always did so unless the patient wanted them, that when he left plaintiff's home he asked him if he wanted the charts, and that plaintiff said he would not need them, that there would be no lawsuit. On redirect examination by plaintiff in response to questions and without objection, he testified as to the remainder of the conversation between himself and plaintiff, saying that plaintiff told him therein that the reason there would be no lawsuit was that Mr. Hale, the vice-president of the Interurban Company, had promised to do the right thing by. him and give him everything he wanted and that he thought Mr. Hale would do the right thing by him. Being asked if Mr. Hale did not call on plaintiff while the witness was nursing him, the witness answered, "Yes, he did." On recross-examination by appellant, the witness was asked if he, the witness, was present when the original conversation between plaintiff and Mr. Hale took place, and an objection of the other defendant that the same was not proper cross-examination and that it assumed something not testified to by the witness, was sustained.

It will be observed that the witness had not anywhere testified as to any conversation between Mr. Hale, the Interurban vice-president, and plaintiff, or even that any conversation had taken place between them except in so far as it was to be implied from the fact that Mr. Hale had called on plaintiff. Except for the latter statement, his testimony had been confined to a statement of a conversation between himself and the plaintiff at which Hale was not present, in the course of which plaintiff told the witness what Mr. Hale had said to him. This latter portion of the conversation plaintiff was entitled to elicit on redirect examination because appellant had elicited the other portion on his cross-examination, and plaintiff was entitled to the whole conversation on redirect examination in order that he might explain thereby the admission intimated by the first portion, viz., that he had said

that there would be no lawsuit because, perchance, he had no just claim. Appellant had the right on recross examination to fully question the witness as to this alleged conversation between himself and plaintiff, and also as to whether Mr. Hale had in fact called on plaintiff, but he was not entitled on cross-examination to go into the question of the original conversation between plaintiff and Mr. Hale, for that subject-matter was in no degree covered by anything he had previously testified to. If the witness was present at any conversation between Mr. Hale and plaintiff wherein plaintiff by conduct or words made any admission inconsistent with his claim asserted in this action, or which conversation was of such a nature as to make it apparent that plaintiff's statement to the witness was untrue and that he desired the charts destroyed for the purpose of suppressing evidence, it was for appellant to introduce the evidence in regard thereto as a part of his own case. We do not think that the evidence that appellant suggests might have been elicited had evidence as to the conversation between Hale and plaintiff been allowed, could have substantially affected or impaired the evidence of the witness as to his own reason for burning the charts. He testified he always burned his charts unless they were desired by the patient. We do not know that the witness was in fact present at the conversation between Hale and plaintiff, and were the case to be reversed on account of the sustaining of the objection to the question asked, the witness might answer that he was not present. The trial court might well have allowed this preliminary question. We have discussed this matter upon the assumption that he was present, and that the question before us is whether appellant was entitled to elicit on cross-examination of the witness the conversation between Hale and plaintiff. This we are satisfied he was not entitled to do except in so far as it might tend to affect the weight to be given the evidence of the witness as to his reason for destroying his charts, and we are satisfied that as to this it could have had no substantial effect, so that in so far as it might have been erroneous at all, the ruling was not prejudicial. As suggested by respondent's counsel, it is apparent that the real purpose of the question was to get before the jury an admission of the vice-president of the other defendant that his company was the one at fault.

12. There was no error in allowing plaintiff to ask his witness Doctor Gerlach certain questions for the purpose of obtaining from him an explanation of certain testimony theretofore given by him. He had previously testified that he had no opinion to offer as to whether plaintiff was now shamming any symptoms, and was asked substantially if he intended thereby to intimate to the jury that he was shamming. He answered that he did not. He was then asked substantially what he did mean by his testimony, and explained that he meant that from a medical standpoint it was difficult and probably impossible to say in regard to the shamming, although he might have an opinion if he could take plaintiff and his personal knowledge of him into consideration. Both questions were legitimate. The witness did not by his answers, as claimed by appellant, express his personal opinion as to plaintiff and his character, or his views as to his shamming based on such opinion.

13. Doctor Pierce, a medical expert called by plaintiff, was asked as to the probability of an injury to the muscles being a lasting and permanent injury in a man of sixty-two years of age, which was plaintiff's age. He proceeded to answer that it would depend entirely on the extent of the injury, of which he knew nothing except what he had heard in the report of the case, but that if the muscle was ruptured or a blood vessel ruptured, and there was an extravasation of blood amounting to a quart, as he understood there was, the chances were— At this point appellant objected that it was unfair to allow the witness to base his answer on any understanding that he had with reference to reports, and the objection was overruled. The witness then finished his answer by saying that the chances are that there would probably be a permanent injury. The answer was substantially that, in the case of a man sixty-two years of age, *if* the muscle was ruptured or *if* a blood vessel was ruptured, and if there was an extravasation of blood amounting to a quart, as to all of which there was evidence, the chances were that there would probably be a permanent injury. The matter elicited by the answer was material and competent.

14. A question asked the plaintiff as to his expenses for medical attendance, medicine, etc., was objected to on the ground that the matter was not within the issues. The objection was

overruled and the witness answered: "I suppose somewhere in the neighborhood of $500 or $600." A motion to strike out the answer as too indefinite was denied. If there was any error in either of these rulings, the effect thereof was obviated by the ruling of the court on motion for new trial, whereby the sum of six hundred dollars, the largest sum that the jury under the evidence could have awarded on this account was ordered remitted as a condition to the denial of a new trial. The order was expressly made upon the ground that the evidence was insufficient to justify the verdict so far as it included any allowance on this account. The remission was made accordingly.

15. A point is made in the closing brief in regard to alleged misconduct of plaintiff's counsel in his argument to the jury, but we cannot conceive that the defendants could have been prejudiced thereby, and do not deem the matter of sufficient importance to warrant discussion.

16. There remains for consideration the claim that a new trial should have been granted because of misconduct of the jury. It was originally claimed that there was misconduct in the means adopted by the jurors in determining the amount of the verdict, but this ground has been expressly abandoned in this court, appellant conceding that it has made no legal showing in regard thereto. The only misconduct now alleged is misconduct on the part of jurors when visiting the scene of the accident under order of court.

During the trial it was stipulated that the jury might be taken by the bailiff to the scene of the accident to inspect the premises. It was suggested by counsel that as two railroad companies operated cars to that point, they might go on the car of one company and return on the car of the other company, so that they might have a better conception of the cars. The court said that the jury was to be taken out not to inspect the cars, but merely to inspect the scene of the accident, and that the cost of transportation would amount to $1.30. A juror asking if they could talk about the location of the cars while on the ground was told that they could not, that they were simply to inspect the scene and not to indulge in discussion among themselves. They were further admonished that it was their duty not to converse with or suffer themselves to be addressed by any other person, and not to form or

express an opinion until the case was finally submitted to them.   The affidavit of the bailiff shows that he accompanied the jury to the scene of the accident, that they went on one of appellant's cars, that some of the jurors rode on the front platform or open part of the car, that they remained at the scene for about fifteen or twenty minutes, that thereupon a car of appellant approached the scene and stopped before the crossing, and a car of the other defendant also approached, that he said to the jurors, "Let's not spend all of our money with one company," and that thereupon they boarded the car of such other defendant and returned to town.   The affidavit of W. F. Carroll, who was the motorman on the car of appellant that took the jurors to the scene of the accident showed that on the trip out all of the jury except two or three sat on the front part or open part of the car on each side of him, "that said jurymen examined the brake of said car as the same was being operated by defendant and the mechanism thereof," that after the jurors alighted he proceeded to the end of his run, that when he returned the jury was still at the scene of the accident, that he stopped before passing the crossing and about nine of the jurors boarded his car, that one of the other company's cars then approaching, a juror said, "Let's ride back on the other car; I have never examined those cars," that some one then said: "Yes, let's not spend all of our money with one company," that all the jurors then boarded the other car, and that as he approached the crossing one of the jurors said: "That is the way Kimic was injured; if the tracks were wet he could not have stopped his car before said crossing." The affidavit of C. P. Simpson, who was the conductor on the same car of appellant was substantially the same as that of the motorman.   None of the matters thus alleged in these affidavits was denied.

The foregoing is all the evidence that can be considered in determining the question of misconduct.   Other affidavits were presented, and there were other statements made in some of the affidavits already mentioned, but these other affidavits and statements cannot be considered.   The affidavits of the motorman and conductor contained certain statements made solely on information and belief.   Such statements are unavailing for any purpose in such a proceeding as this (see *Gay* v. *Torrance,* 145 Cal. 144, 151, [78 Pac. 540], and cases there

cited; *People* v. *Field,* 149 Cal. 478, [86 Pac. 1100]). The affidavits of two of the jurors were presented for the purpose of showing misconduct. These, of course, were unavailing for any purpose, a juror not being permitted to impeach the verdict except upon the single ground that the verdict was the result of a resort to the determination of chance (Code Civ. Proc., sec. 657, subd. 2; *Siemsen* v. *Oakland etc. Ry. Co.,* 134 Cal. 497, [66 Pac. 672], and cases there cited). Affidavits of others than jurors detailing conversations with jurors after the verdict and showing statements made by the jurors in such conversations tending to impeach their verdict were also unavailing. While these affidavits were not, in terms, affidavits by jurors impeaching their own verdict, they were affidavits of admissions made by jurors to the same effect. "If the juror himself would not have been permitted to make affidavit directly to these facts, clearly the affidavit by another, of his declarations and admissions, offered for the same purpose, would be equally inadmissible. What the juror could not do directly could not thus indirectly be effectuated." (*Siemsen* v. *Oakland etc. Ry. Co.,* 134 Cal. 497, [66 Pac. 672]. See, also, *People* v. *Murphy,* 146 Cal. 506, [80 Pac. 709].) The statements in the counter affidavits of eleven of the jurors "that he was governed entirely in his deliberation and in reaching said verdict by the evidence introduced at the trial thereof, and that no outside fact or circumstance influenced him in his deliberation or verdict," were ineffectual for any purpose. It is thoroughly settled that jurors cannot be heard to deny the prejudicial influence on their minds of knowledge acquired by misconduct. (*People* v. *Stokes,* 103 Cal. 193, [42 Am. St. Rep. 102, 37 Pac. 207]; *People* v. *Chin Non,* 146 Cal. 562, [80 Pac. 681].) Affidavits of jurors may be used to disprove or explain the alleged misconduct but cannot, admitting the misconduct, be used to show that the verdict was not influenced thereby. (*People* v. *Stokes,* 103 Cal. 193, [42 Am. St. Rep. 102, 37 Pac. 207].)

There being nothing in the affidavit of the bailiff tending to show misconduct, we are left solely to the statements contained in the affidavits of the motorman and conductor which we have already set forth.

By these affidavits it appears that on the ride out to the scene of the accident, the jurors who were seated on the out-

side of the car "examined the brake of said car as the same was being operated by deponent and the mechanism thereof." This was the statement of the motorman, and the conductor said that being passengers and sitting in front on each side of the motorman, the jurymen "examined the brake of said car, and the mechanism thereof, while on said car." This it is urged, was a taking of evidence by the jurors out of court contrary to the instructions of the court, of such importance that it constituted prejudicial misconduct. To us it seems that the statements of the motorman and conductor cannot be reasonably taken as meaning that the jurors made the critical investigation and examination of the brake and its mechanism suggested by counsel for appellant They were riding on the outside of the car and they saw the portion of the brake and its mechanism that was in plain sight, as it was being operated by the motorman, and that was practically all. They saw only what the parties to the action must have known they would naturally see if they rode on the outside of the car at all. Assuming that this was a technical receiving out of court of evidence, was it important enough to warrant a reversal? However strictly the decisions may lay down the rule as to the effect of misconduct of the jury that may well have prejudiced the parties, it is settled in this state that a new trial will not be granted on that ground where the misconduct was of such trifling nature that it could not in the nature of things have been prejudicial to the moving party, and that where it appears that the fairness of the trial has been in no way affected by such impropriety, the verdict will not be disturbed. (*Siemsen* v. *Oakland etc. Co.*, 134 Cal. 494, 498, [66 Pac. 672].) Counsel for appellant concedes that if the evidence thus received was immaterial to any issue in the case, the misconduct was not prejudicial error. It is clear to us that the evidence alleged to have been received here was absolutely immaterial to any *real* issue in the case, as the same was presented for determination. Nobody claimed that there was anything wrong with the brakes or their mechanism, or that the accident was due to any defect therein. The real issue in the case so far as defendant's liability was concerned was whether defendant's motorman was warranted in assuming that the Interurban car would not be at the crossing at the time he reached it. That he approached the crossing at

such a rate of speed that he could not stop in time to avoid anything thereon, however well adapted to all purposes was his brake, appears to be undenied by any evidence. Under these circumstances we cannot see that the so-called "examination" of the brake and its mechanism was a matter of any importance or that it could have been prejudicial to defendant's cause.

The other incident shown by these affidavits and relied on as prejudicial misconduct was the remark made by one of the jurors during the inspection of the scene of the accident at the time appellant's car approached the crossing, "That is the way Kimic was injured; if the tracks were wet he could not have stopped his car before said crossing."

It must be conceded that the juror was guilty of a violation of the instructions of the court and of his duty as a juror in making the statement. But we cannot go with appellant's learned counsel to the extent of holding that the statement necessarily showed "a prejudiced mind." It may well have been a statement made on the spur of the moment, caused entirely by an honest conclusion as to the speed at which the car had just approached the crossing. We cannot conceive that the incident could have ultimately affected the minds of intelligent jurors as we must assume the jurors who heard the statement to have been, to the prejudice of defendant's cause. It is claimed by appellant and alleged in the affidavits of both motorman and conductor that the car was under perfect control as it approached the crossing and could have been stopped even if the tracks had been wet. The manner of approach was as patent to the other jurors as it was to the juror making the statement and any conclusions in regard thereto by such other jurors would naturally be based on their own observations rather than on any statement made by another juror. But the manner of approach of this car under the control of other employees on a single occasion more than six months after the accident was so absolutely irrelevant to the real question at issue, the question whether another employee many months before had used proper care in approaching the same crossing, that, as we have said, we cannot conceive that it could have affected in the slightest degree the minds of any ordinarily intelligent juror in the determination of this case. And as we have also said, we must assume that these

jurors were men of at least ordinary intelligence. So far, therefore, as the other jurors are concerned, there is nothing that would warrant us in holding that the misconduct of the juror who made the statement may have operated prejudicially to defendant's cause. As to the juror who made the statement, a somewhat different question is presented. It does appear from the statement itself that the manner of approach of appellant's car at that crossing on the day of the visit was such as to convince him that the motorman could not have stopped at the crossing if the track had been wet, and that he hastily concluded for the moment that the situation must have been the same at the time of the accident, and stated accordingly. The trial court was fully warranted in holding that the making of this statement did not necessarily show a prejudiced mind or a desire to influence other jurors against appellant, but that it was simply the expression of a hasty conclusion caused by what he believed he then observed in the presence of the other jurors. Are we compelled to assume, contrary to the conclusion of the trial court, that the proof as to the making of this statement by him shows that in so far as he was concerned the appellant may not have had a fair and impartial jury, and a determination reached solely on the evidence introduced on the trial? In view of what we have heretofore said we believe that this question must be answered in the negative. The trial court was warranted in holding that the conclusion thus hastily reached and expressed, based as it was upon an absolutely irrelevant fact, could not have operated, in the nature of things, to affect the juror's mind in reaching a verdict. The case is very different on its facts from the cases cited and relied upon by appellant.

The foregoing disposes of all the points made for reversal. The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.