FORT WORTH & DENVER CITY RAILWAY COMPANY v. R. S. HAYS.

Decided October 20, 1910.

1.—Personal Injuries—Evidence—Physical Examination—Exclamations and Complaints.

In a suit for damages for personal injuries, testimony of three physicians as to the flinching and wincing and the exclamations and complaints of pain by plaintiff while undergoing a physical examination, reviewed and held admissible; and this, though two of the physicians were employed by plaintiff after the suit was filed for the sole purpose of obtaining information upon which to base expert testimony in his favor.

2.—Same.

Exclamations, shrinkings and other expressions of a party which appear to be the instinctive or spontaneous betrayal of pain, are admissible in evidence upon an issue of personal injury. And the fact that such expressions of pain occurred during a physical examination instituted by the plaintiff for the purpose of obtaining testimony to be used in a damage suit, would not render it inadmissible.

3.—Jury—Newspaper Article—New Trial—Discretion of Court.

Pending the trial of a damage suit the jury read a newspaper article in which the amount of the verdict on a former trial was stated; neither the plaintiff nor his counsel were in any way responsible for the publication of the article; at the request of the defendant the court charged the jury not to consider or be influenced in their finding by anything or information except the evidence and the charge of the court; the court overruled a motion based in part upon the alleged misconduct of the jury. Held, the misconduct of the jury in reading the article was not sufficient cause for reversing the judgment of the trial court.

4.—Negligence—Concurring Acts—Liability.

Where a personal injury is the result of several concurring acts of negligence, a special charge exempting the defendant from liability if he was not guilty of negligence in one of said respects, is properly refused.

Error from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*Spoonts, Thompson & Barwise,* for plaintiff in error.—The testimony of a physician as to exclamations and complaints of pain and suffering, as also the "flinching" and "wincing" of a damage suit plaintiff, which things occurred in a physical examination had after suit filed, and there is an existing motive to mislead, deceive and falsify, are inadmissible as evidence. Where, as in this case, the examination is made by physicians engaged to testify for and not to treat such patient-plaintiff; where the examination is had at a time and under all environments of such interested person's own selection; where such examination is manifestly brought about solely to furnish data to the employed doctor to qualify him to express on the witness stand a favorable opinion as to the injuries of an interested actor at such examinations; in short, where such an examination is a mere exploit to obtain testimony—a mere "auxiliary to a lawsuit,"—it is not competent for the physician under these conditions to reproduce before the jury the declarations and the conduct of the

patient. Missouri, K. & T. Ry. Co. v. Johnson, 95 Texas, 409, and also the following cases therein cited and approved by our Supreme Court, towit: Grand Rapids Ry. Co. v. Huntley, 38 Mich., 543; Darrigan v. Railway, 52 Conn., 291; Jones v. Portland, 50 Northwestern, 733; Delaware, L. & W. Ry. v. Roalefs, 70 Fed., 21; Lambertson v. Traction Co., 38 Atl., 683; Abbott v. Heath, 84 Wis., 320; Stone v. Railway, 88 Wis., 98; Keller v. Gilman, 93 Wis., 9; Laughlin v. Railway, 80 Mich., 154.

The court erred in overruling and in not sustaining the defendant's motion for a new trial, for the reason that after the jury had been empaneled in the trial of this cause and after the testimony had been introduced by the respective parties and before the jury had deliberated upon its verdict in the cause, there was published in one of the newspapers in the city of Fort Worth, having a wide circulation, a certain article purporting to contain the facts concerning a former trial of this cause, which said article was as follows:

"Return Wreck Case.

"Suit Grows Out of Denver Accident in 1906.

"The case of S. R. Hays v. the Fort Worth & Denver Railway Company is one of the longest drawn out and most stubbornly contested damage suits tried in the District Courts this year. · The plaintiff, S. R. Hays, alleges that his spine was seriously injured in a wreck on the Fort Worth & Denver near Wichita Falls, November 30, 1906. He is suing for $20,000. The jury in the first trial of the case, June, 1907, awarded the plaintiff $7000. The case was reversed and remanded for a new trial. The two seats upon which the plaintiff is alleged to have been thrown when the wreck occurred have been introduced in evidence. The case will likely go to the jury Friday afternoon."

That several of the jurors engaged in the trial of the case were citizens of Fort Worth, and at least two of the said jurors so engaged in this trial, and likely more of them, read the said article referred to in said newspaper. Hasson v. Railroad Co., 21 W. N. C. (Pa.), 96; Walker v. State, 37 Texas, 389, top of page; Morse v. Montana Purchasing Company, 105 Fed., 337, and the authorities therein cited; People v. Stokes, 103 Cal., 193; People v. McCoy, 71 Cal., 397; Meyer v. Cadwalader, 49 Fed., 32; State v. Walton, 92 Ia., 455; Farrer v. State, 2 Ohio St., 54.

*Wallace & Mount, McCart, Bowlin & McCart* and *Carden, Starling & Carden,* for defendant in error.—Involuntary and spontaneous complaints, exclamations, flinching and reflex acts of pain wrought from a patient-plaintiff in a personal injury action through tests applied by a doctor in an examination had for the purpose of qualifying such doctor as an expert witness as to the nature and extent of plaintiff's injuries, are admissible as res gestae. El Paso & S. W. Ry. Co. v. Polk, 108 S. W., 762; Wheeler v. T. S. E. Ry. Co., 91 Texas, 356; Missouri, K. & T. Ry. Co. v. Johnson, 67 S. W., 768; Missouri, K. & T. Ry. Co. v. John-

son, 67 S. W., 769; Texas & P. Ry. Co. v. Barron, 78 Texas, 423; Houston & T. C. Ry. Co. v. Shafer, 54 Texas, 643; Missouri, K. & T. Ry. Co. v. Rose, 49 S. W., 133; St. Louis S. W. Ry. Co. v. Martin, 63 S. W., 1089; Williams v. Great Northern, 37 L. R. A., 199; 1 Greenleaf, sec. 102.

Since Dr. Wright was employed by plaintiff for the purpose of treatment, and sustained such relation during all the examinations, he would have been permitted to testify to statements and declarations of existing pain and suffering. Missouri, K. & T. Ry. Co. v. Rose, 49 S. W., 133; Texas Cent. Ry. Co. v. Powell, 86 S. W., 23; Williams v. Great Northern, 37 L. R. A., 199; 1 Greenleaf, sec. 102; El Paso & S. W. Ry. Co. v. Polk, 108 S. W., 762.

The fact that some of the jurors knew or may have learned through a newspaper the amount of the former verdict in this case, would not disqualify them as jurors, and the court did not err in refusing a new trial on that ground.

The granting of a new trial for misconduct of a jury is by statute placed within the discretion of the trial court, and where it appears that the trial court has not abused this discretion in overruling the motion, the appellate courts will not disturb his ruling. Kalteyer v. Mitchell, 110 S. W., 462; Kelteyer v. Mitchell, 117 S. W., 793; Gulf, C. & S. F. Ry. Co. v. Blue, 102 S. W., 128; art. 1371 as amended 1905, McIllwaine; Copeland v. Wabash Ry. Co., 75 S. W. (Mo.), 106, and numerous cases there cited.

LEVY, ASSOCIATE JUSTICE.—A passenger train on which defendant in error was riding as a passenger collided with an engine on the main track in the yard at Wichita Falls, under such circumstances, we conclude, as to warrant the finding by the jury of negligence of plaintiff in error, as alleged in the petition, proximately causing the injuries complained of. The collision was with such force as to throw defendant in error from his seat to the aisle of the car, resulting in permanent injury, according to the finding of the jury, to his back and spine; and the verdict as to the amount of damages is, we think, sufficiently warranted by the testimony.

It is contended by the first and second assignments of error that there was error in admitting certain testimony of three physicians set out in the bill of exceptions. The point presented is that exclamations and complaints of pain and suffering, as also the flinching and wincing of the plaintiff, are inadmissible as evidence, which things occurred in a physical examination after suit was filed, and on and during examination by physicians engaged to testify for, and not to treat, such patient-plaintiff. In this connection it must be said, we think, that the evidence shows that Dr. Wright was the attending physician of the defendant in error for purposes of treatment of his injuries, and did treat him during all the time covered by his examinations, and was not called in solely for the purpose of making an examination to obtain information with

which to be able to give expert testimony in the trial. The other two physicians, however, were making the examination at the request of defendant in error, at a time and place agreed upon, for the sole purpose of obtaining information upon which to base expert testimony favorable to defendant in error.

The testimony of Dr. Wright, the regular attending physician, complained of, was to the effect that he made several examinations of the defendant in error after the happening of the injuries, and that on the first examination he was unable to come to any conclusion, but from the second examination on up, and including the subsequent examination, he reached the conclusion that defendant in error was suffering from chronic disseminated myelitis; that on the second and subsequent examinations, while he would be examining the defendant in error and when he would press his spine at particular points, the defendant in error evinced points of tenderness along the spine, and would call out, "Quit," or "Stop," and would "wince." He testified, "When I say that Hays 'evinced pain,' I don't mean that he said or claimed that he was suffering pain; of course he complained of pain when he holloed 'Quit,' or 'Stop,' but that didn't have any weight with me; it was the jerking of the parts. His saying that it hurt, or for me to stop, didn't have much effect on my coming to my conclusions. I could not have believed he was suffering at all if I hadn't had the 'reflex' from the simple fact. I had a statement and the 'reflex,' which were corroborated. I would say that the reflex action constituted about 75 per cent, and the particular incidents and what he said constituted about one-fourth of it in coming to my conclusions." He explained that at the point of soreness, when pressing it with his fingers, there was a convulsive action of the muscles there, a jerking of the parts away, and that this convulsive action of the muscles was simultaneous with the "wince" and the exclamations of "Stop," or "Quit."

The portion of the testimony of the two other physicians complained of was to the effect that they examined defendant in error by laying his back bare and then by making pressure along the spine with the thumb. Their testimony was practically the same. "When I came to a place where he would flinch or jump quickly as if in pain I marked that point with a pencil, and at every point where he would flinch I would mark it. I would go along on different parts of the body, and whenever I would find such places I would mark them. Again, I would go over them a second or third time to prove or to find out whether the pain occurred at the same point or not; when the pain occurs at the same point after several examinations, we infer from that there is a point of pain there; a man flinches or makes an outcry. In making this examination I looked around for something sharp. I ran a cambric needle I guess three-fourths of an inch deep in and around the back part of the thigh and over the back where it joins the frame. It did not make any impression on him and he did not jump, and if it hurt he did not say so or make any movement. During this examination he would complain of pain;

that is, he didn't say anything, but he would jump when I would stick him where it hurt him. He would wince or flinch." They each testified that when they touched the pencil-marked points defendant in error would flinch or wince, and "from my experience as a doctor I would say that it would not be possible for a patient to locate the exact spot of pain under an examination such as I have described as having given Mr. Hays, if he does not in fact feel the pain; it would not be possible for him to locate the spot with the exactness that Mr. Hays did."

We think the testimony admissible, and that the assignments should be overruled. The testimony of Dr. Wright, the regular attending physician, as seen, was clearly within the rule allowing complaints or exclamations which are the spontaneous manifestations of distress or suffering. 1 Greenleaf, sec. 103; Wheeler v. Tyler S. E. Ry. Co., 91 Texas, 356; Missouri, K. & T. Ry. Co. v. Rose, 19 Texas Civ. App., 470 (49 S. W., 133). And under the same rule the testimony of the other two physicians was admissible. We do not think any of the testimony objected to comes within that character of inhibited evidence discussed in the opinion in Missouri, K. & T. Ry. Co. v. Johnson, 95 Texas, 409. In the instant case, the evidence was not a reproduction or quotation by the physicians of mere exclamations or statements of defendant in error of his suffering pain; but, as seen, was testimony going to show solely an instinctive and spontaneous betrayal of pain under pressure of the parts during physical examination of the injury. On the contrary, the evidence objected to in the instant case is, we think, strictly within the following observation made by the court in the Johnson case: "The authorities referred to admit that exclamations, shrinkings and other expressions of a party which appear to be the instinctive or spontaneous betrayal of pain are admissible, although they be made under circumstances such as are disclosed here." The circumstances there referred to was an examination by a physician solely for the purpose of qualifying such physician to testify.

By the third assignment it is contended that it was such misconduct on the part of the jury to have read in a newspaper article, during the trial, of the amount of the former verdict in the case, as to constitute reversible error. The newspaper article did not discuss the merits of the case whatever, and neither defendant in error nor his counsel, it is agreed, knew anything of the article or had anything to do with its publication. The court, at the request of plaintiff in error, gave a special charge pertaining to the matter, admonishing the jury to not consider or be influenced in their finding by anything or information except the evidence and the charge of the court. The granting of a new trial for misconduct of a jury is by statute placed within the discretion of the trial court; and where it appears, as here, that the trial court has not abused this discretion in overruling the motion, the appellate courts do not feel authorized to disturb the ruling. The mere fact that some of the jurors knew the amount of the former verdict would not in itself and alone disqualify them from being jurors in the first instance; and

as the trial court on the hearing ruled that the reading of the article in question by some of the jurors was not of itself sufficient cause for setting aside the verdict in this case, we feel constrained to hold in this case that a reversal of the judgment by this court upon that ground would not be warranted. See Copeland v. Wabash Ry. Co., 75 S. W., at p. 114, which is similar to the instant question.

The fourth assignment complains of the refusal to give a special charge to the effect that plaintiff in error would not be liable for the injuries upon the finding that the smoke from the standing engines of plaintiff in error was blowing across the track, and that this caused or contributed to cause the failure of the engineer to discover the standing engine in time to have avoided the collision. The effect of this charge was to absolve plaintiff in error of liability upon the mere inability of the engineer to discover the standing engine because of the smoke which enveloped it, regardless of other acts of negligence in the manner of running the train, or to check or stop it, or the negligence of other employees in permitting the standing engine to be on the main track at the time under the circumstances. And it excused plaintiff in error's liability if the smoke contributed to the engineer's inability to sooner see the standing engine, even though the smoke, concurring with some other act of negligence, produced the collision. The assignment is overruled.

The two remaining assignments complain of the refusal of the court to grant a new trial, on the ground that the verdict of the jury is not warranted by sufficient testimony and is excessive. We have carefully considered each ground, and think the evidence supports and warrants the verdict and the amount.

The judgment was ordered affirmed.

*Affirmed.*

Writ of error refused.