[No. 18294. Department Two. February 14, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v.
LUIGI ADAMO, *Appellant*.[1]

CRIMINAL LAW (347)—NEW TRIAL—GROUNDS—MISCONDUCT OF
JURORS. It is not sufficient ground for a new trial in a homicide case
that a newspaper account of the result of a former trial and convic-
tion was found in the jury room and that one of the jurors read
the head lines and learned that accused had been convicted. at a
former trial.

SAME (106)—EVIDENCE—RES GESTAE—STATEMENTS OF THIRD PER-
SONS. In a homicide case, the testimony of the son of the deceased
that, immediately after the killing, the accused said "Ha, I kill you
too," is admissible as part of the *res gestae*.

SAME (216)—TRIAL—COMMENT ON EVIDENCE. It is not an unlaw-
ful comment on the evidence for the court in giving his reasons for
a ruling stated that he would instruct the jury it is material evi-
dence.

SAME (236)—TRIAL—ARGUMENTS OF COUNSEL. The prosecuting
attorney in summing up the case, may use strong language in stat-
ing his inferences and deductions from the evidence.

HOMICIDE (101, 111, 117)—TRIAL—INSTRUCTIONS—PREMEDITATION
—SELF-DEFENSE—INCONSISTENT INSTRUCTIONS. An instruction is not
objectionable as eliminating the defense of self-defense, in stating
that there would be premeditated design if accused shot the de-
ceased with the intent of killing him, where, by another instruction
the jury were told that the jury must find that the killing was not
justified.

SAME (111, 117)—SELF-DEFENSE—INCONSISTENT INSTRUCTIONS.
It is not inconsistent to instruct, on self-defense, that there must
be or appear to be some overt act, and to state that, although it is
not necessary to find that any overt act was actually committed by
the deceased, yet "bare fear" will not be a justification unless there
was reasonable grounds therefor.

CRIMINAL LAW (316)—TRIAL—INSTRUCTIONS—REQUESTS. It is not
error to refuse requested instructions fully covered by other in-
structions given.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered February 23, 1924,
upon a trial and conviction of murder. Affirmed.

[1]Reported in 223 Pac. 9.

*Corkery & Corkery* and *Tustin & Chandler,* for appellant.

*Chas. H. Leavy, Edward M. Connelly,* and *M. E. Jesseph,* for respondent.

Bridges, J.—The defendant has twice been convicted on the charge of murder. On his appeal from the first conviction we reversed the sentence and directed a new trial. *State v. Adamo,* 120 Wash. 268, 207 Pac. 7. At a second trial he was again convicted, and has again appealed. Sufficient of the facts necessary to the consideration of the questions now raised may be found in our previous opinion.

The first assignment of error grows out of the following facts: During the trial and after the jury had been made up and some of the testimony introduced, the bailiff in charge of the jury found on the floor of the men's toilet in the jury room a newspaper report of the former trial. To this he called the attention of the trial court. After a conference between the court and counsel for both parties, it was understood that the court might interrogate the jury concerning their knowledge of this newspaper report, and if they answered that they knew nothing about it or had not read it, there would be no objection to proceeding with the trial. Thereupon the court stated to the jury that a certain newspaper report of a former trial of the case had been found in the jury room and asked if any juror had seen or read it. They answered in the negative. The trial then proceeded.

After the verdict was rendered, one of the jurors made an affidavit in support of a motion for a new trial to the effect that, during the trial of the case, while he was in the attorney's room in the courthouse telephoning, he saw on the window sill the newspaper clipping in question; that at that time he noticed a headline to

the effect that Adamo had been convicted and sentenced to ten years. He did not read the article but may have seen more of the headlines. The top headline read: "Convict Adamo killing Gracio. Second Degree verdict. Ten years to life in pen." The sub-headlines were: "Adamo makes no comment," "Discount self-defense plea," "Four ballots taken." This juror, during the progress of the trial, informed another juror that he had seen the headlines of a newspaper article showing that the appellant had been convicted at a former trial, but the second juror was not further informed of the contents of the article nor did he see it. It is shown that the clipping was one which one of the appellant's attorneys had in his possession and which he had given to a newspaper reporter, pending the second trial, from which the latter might obtain such information as he desired concerning the former trial. How this article got into the jury room no one seems to know. The other jurors made affidavit to the effect that they did not see the article and knew nothing about it, and the juror who saw it and the one who was told about its existence made affidavits that what they had learned from it in no manner influenced them. The question is, should the court have granted a new trial because of this situation.

As indicated above, the headlines of the newspaper article only pretended to give the results of the former trial. Neither they nor the article itself pretended to express any opinion concerning the guilt or innocence of the appellant, nor did they in any way attack him. It was apparently a fair report of the result of the first trial. We may not consider those portions of the jurors' affidavits to the effect that they were in no wise influenced by the article in question because jurors may not impeach their verdict in this way. *State v.*

*Parker,* 25 Wash. 405, 65 Pac. 776; *Maryland Casualty Co. v. Seattle Electric Co.,* 75 Wash. 430, 134 Pac. 1097; *State v. Burke,* 124 Wash. 632, 215 Pac. 31.

Jurors possess at least average intelligence and integrity. They are sworn to return a verdict in accordance with the evidence. They are instructed that they may not consider matters outside of the evidence. If this same juror had before the trial read the whole of this identical article he would not have been disqualified as a juror. If the article had been an attack upon the appellant, or had expressed opinions concerning his guilt, or if it had been a grossly unfair statement of the former trial, then the court might presume prejudice. Such was the situation in *People v. Stokes,* 103 Cal. 193, 37 Pac. 207, 42 Am. St. 102, and *Capps v. State,* 109 Ark. 193, 159 S. W. 193, Ann. Cas. 1915C 957, 46 L. R. A. (N. S.) 741. Even if all the members of the jury had read the whole of this newspaper article we do not see how it could have influenced their verdict, unless we are to assume that jurors are unfit for the important duties imposed on them. As said by Judge Dunbar in *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449:

"In addition, we must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of their duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure."

It has very generally been held by the courts that in civil cases the reading by one or more of the jurors pending the trial of a newspaper article purporting to give the result of a former trial, is not ground for a new trial. *Sherwood v. Chicago & W. M. R. Co.,* 88

Mich. 108, 50 N. W. 101; *Illinois Central R. Co. v. Souders,* 178 Ill. 585, 53 N. E. 408; *Copeland v. Wabash R. Co.,* 175 Mo. 650, 75 S. W. 106; *Fort Worth & D. C. R. Co. v. Hays,* 62 Tex. Civ. App. 369, 131 S. W. 416; *Partello v. Missouri Pac. R. Co.,* 240 Mo. 122, 145 S. W. 55.

While in no criminal case have we found the exact question here involved, yet there are cases so closely analogous as to indicate that the rule in civil cases would be followed: *People v. Fong Sing,* 38 Cal. App. 253, 175 Pac. 911; *State v. Sousa,* 43 R. I. 176, 110 Atl. 603; *State v. Crowley,* 113 Me. 568, 94 Atl. 754; *State v. Waitman,* 42 S. D. 5, 172 N. W. 504; *People v. Lubin,* 190 App. Div. 339, 179 N. Y. Supp. 691.

Our attention is called to the case of *State v. McCormick,* 20 Wash. 94, 54 Pac. 764, where we held that a new trial should be granted because, with the consent of the court the bailiff was permitted to hand the juror two unopened letters. In *State v. Pepoon, supra,* we, in effect, repudiated the holding in that case.

Our attention is also called to *State v. Strodemier,* 41 Wash. 159, 83 Pac. 22, 111 Am. St. 1012, where we held that, because the bailiff, while the jury was out of the jury room and in his charge, took one of them into a public saloon, where they had a drink of intoxicating liquor, a new trial should be granted. This opinion was by a divided court. The basis of the conclusion which the court reached was apparently the improper conduct of the bailiff rather than that of the juror himself.

The granting of a new trial because of the alleged misconduct of jurors is in the discretion of the trial court and we will not interfere unless we are convinced that the discretion has been abused. Here we do not find any such abuse. As previously stated, the courts

seem to be practically unanimous that in civil cases misconduct such as is involved here is not cause for a new trial. If such conduct is not prejudicial in a civil case, it cannot be in a criminal case.

Persons charged with crime have an undoubted right to a fair trial before a fair jury, but it does not follow that a new trial must be granted because of every slight misstep or deviation from the customary rules governing trials.

Error is claimed because the court permitted the son of the man who was killed to testify that, immediately after the shooting of his father by the appellant, he approached the latter, who said to him: "Ha! I kill you too. . . . " This incident so closely followed the actual killing of deceased that it tended to show the frame of mind of the appellant at the time of the shooting and was also a part of the *res gestae.*

On cross-examination of the appellant the prosecuting attorney sought to have him explain why he did not, at a certain stage of the quarrel, leave the deceased and go to his home by a somewhat unusual route. The court in overruling the objection said, "I will instruct the jury it is material testimony for the jury to consider in the determination of this case." Manifestly, the reporter did not get the exact words used by the court. Evidently what the court had in mind was that the testimony which was sought to be elicited was material and that he would instruct the jury concerning it. This would not be a comment on the evidence. In any event, the court was merely giving the reasons for his ruling, and such cannot be considered a comment on the testimony within the prohibition of the constitution. *State v. Meyers,* 121 Wash. 579, 210 Pac. 4; *State v. Storrs,* 112 Wash. 675, 192 Pac. 984, 197 Pac. 17.

It is claimed that the argument to the jury by the prosecuting attorney and his deputy was improper and such as to inflame the minds of the jury and to prejudice them against the appellant. The strong language used was the prosecutor's inferences and deductions from the testimony, and these he had a right to draw and express to the jury. What was thus said was not prejudicial.

Complaint is made of instruction No. 5. It was concerning premeditated design and was to the effect that, if the appellant shot the deceased "with the intention of killing him, and that this intention was thought about or considered by him beforehand," then there would be premeditation, and that a moment's reflection might be sufficient. The appellant contends that this instruction wholly eliminates the idea of self-defense and was wrong for that reason. But by instruction number four the court told the jury that, before the appellant could be found guilty of murder in the first degree, the state must show four things; the third of which was that there must have been premeditation, and the fourth was that the killing was not justified. The instruction to which objection was made was with reference to premeditation. Other instructions properly covered self-defense.

It is contended that instruction number eight is not justified by the evidence. By it the court sought to inform the jury concerning the law in the event they believed the appellant was the aggressor. There was ample testimony upon which the jury might have concluded that he was such.

Instruction twenty, of which complaint is made, correctly states the law as applicable to the testimony in this case.

It is next contended that the court's instructions numbers fourteen and seventeen were inconsistent, one

with the other, because in one the jury is told that
there must be some overt act on the part of the de-
ceased tending to indicate that he would kill or do
great harm to the appellant before the latter might kill
in self-defense, while in the other the jury was in-
formed that there need not be any such overt act.
While these instructions may not be happily worded,
they are not, in our opinion, open to the objection made.
They were both with reference to self-defense. Num-
ber 14 was to the effect that, to justify killing in self-
defense, there need be no actual danger, "but there
must be or reasonably appear to be . . . some overt
act . . ." Number 17 tells the jury that "although it
is not necessary that you find that any overt act was
actually committed by the deceased," yet "bare fear"
alone will not be a justification unless there was rea-
sonable ground for the fear, etc.

The first instruction does not state that to justify
the killing there must have been some actual overt act,
but that either there must have been such overt act or
a reasonable anticipation that one would immediately
follow. This is correct because one, to act in self-de-
fense, is not bound to wait till the other has drawn.
Number 17 carries out the idea of number 14 by saying
that no overt act need have been "actually committed."
We have no doubt these instructions correctly stated
the law.

Instruction number nineteen, given by the court,
covered everything proper in appellant's requested in-
struction number eight.

Complaint is also made because the court refused to
give other of the appellant's requests. We will not
set them out nor discuss them in detail. A careful con-
sideration of them convinces us that the instructions
given by the court fully covered all proper requests,

and that those given very fairly and clearly presented to the jury the law of the case.

Since appellant seems to have had a fair trial, it is our duty to, and we do, affirm the judgment.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.