## TEXAS INDEMNITY INS. CO. v. HALLIBURTON et al.

### No. 6509.

Court of Civil Appeals of Texas.
Texarkana.

Dec. 7, 1950.

Rehearing Denied Jan. 4, 1951.

500

Fountain, Cox & Gaines, Joyce Cox, and Robert Hobbs, all of Houston, Edwin M. Fulton, Gilmer, W. C. Hancock, Pittsburg, for appellant.

Davis & McNeill, W. I. Davis, and Dave McNeill, Jr., all of Center, Florence & Florence, C. E. Florence, all of Gilmer, D. S. Meredith, Jr., Longview, for appellee.

LINCOLN, Justice.

This is a second appeal of a workmen's compensation case filed by Texas Indemnity Insurance Company after an award by the Industrial Accident Board in favor of Mrs. Delia Halliburton, the surviving wife, and the two daughters, as statutory beneficiaries of B. B. (Bonnie) Halliburton, who was killed March 23, 1944, while unloading ties onto a railroad car in a tie yard at Gilmer, Texas. All issues arising out of the Compensation Law were settled by trial stipulations with the exception of whether B. B. Halliburton at the time of his injury and death, was an independent contractor or an employee of Kirby Lumber Corporation within the meaning of the Workmen's Compensation Act. Vernon's Ann.Civ.St. Art. 8306 et seq.

On the basis of the stipulated facts, and on jury findings that Halliburton when injured was an employee of the assured, and was not an independent contractor, judgment was rendered in favor of Mrs. Halliburton and her daughters for compensation for the full time and rate provided by said Act.

Appellant presents substantially the same points of error as in the former appeal, namely, that as a matter of law B. B. Halliburton, at the time of his injury and death, was an independent contractor and not an employee of Kirby Lumber Corporation, that there was no evidence to support the jury findings, that the evidence was insufficient to support such findings, and that the verdict was against the overwhelming preponderance of the evidence.

We do not deem it necessary to make an extended statement of the facts upon which the jury verdict might rest. In the former appeal a full statement of the evidence was set out in this court's opinion. Texas Indemnity Insurance Co. v. Halliburton, 209 S.W.2d 775. The record here discloses that all the facts on the former trial were present on the last, and there are additional facts which go to support the jury's verdict. On the former appeal this court held there was no evidence to support the verdict and judgment. This holding was reversed by the Supreme

Court. Halliburton v. Texas Indemnity Insurance Co., 147 Tex. 133, 213 S.W.2d 677, 680. In that decision the Supreme Court, after stating the facts, said that "there is substantial testimony conflicting with that introduced by respondent (appellant) in support of its contention with respect to the character of control reserved by Kirby Lumber Corporation under the terms of the contract."

It is contended on this appeal as on the former that the control exercised by the assured's agents was merely for the purpose of seeing that the result achieved in loading the ties was in accordance with the contract. The terms of the contract are still in dispute. In ruling on this phase of the case, the Supreme Court said: "In view of the dispute over the terms of the contract, however, and the fact that there is evidence showing acts of control over details not connected or concerned with the carrying out of the rules or specifications, it was merely other evidence to be considered by the jury in deciding the nature of the relationship between respondent (appellant) and the Halliburtons."

As will be seen from the opinion of the Supreme Court, the evidence on the former trial was sufficient to authorize the verdict there rendered. We quote: "Since the evidence on the question of the relationship between B. B. Halliburton and Kirby Lumber Corporation is conflicting and would warrant either a finding that B. B. Halliburton was an employee or that he was an independent contractor, the Court of Civil Appeals was without authority to substitute its finding upon that question for that of the jury."

Since the evidence on this trial is equally as strong, if not stronger, than on the former trial, we follow the holding of the Supreme Court that it was sufficient to support the verdict of the jury, and that the trial court did not err in rendering judgment for appellees on the verdict rendered.

Appellant urges that on the former appeal this court held that the evidence was insufficient to support the verdict, that the evidence on this appeal is substantially the same as on the former, and that our holding of insufficiency of evidence is now the law of this case, and for that reason, the judgment should be reversed. However, as may be seen from the decision of the Supreme Court, that Court did not agree that the evidence was insufficient. As appears in the foregoing quotations from that decision, it was held that the evidence was conflicting on the issues involved and was sufficient to warrant a finding that Halliburton was an employee or that he was an independent contractor. Assuming that the evidence is substantially the same, as appellant asserts, yet it is our duty to follow the Supreme Court, even though in doing so we reverse our former decision. Points 1 to 6, inclusive, raising these questions are overruled.

In appellant's motion for new trial it was alleged that while the trial of the case was in progress certain jurors read the following newspaper article which appeared in the Gilmer Mirror, and which resulted in injury to appellant:

"Insurance Trial Continuing in District Court"

"Re-trial in the Texas Indemnity Insurance Co. v. Mrs. Delia Halliburton suit has occupied the district court here this week, with Judge T. C. Chadick on the bench.

"A jury was selected Monday and testimony began Tuesday. The case was tried in Upshur district court in January of 1947 and sent to the Court of Civil Appeals, Texarkana, in February. From there it was sent to the Supreme Court, which, reversed it for re-trial here on a writ of error in judgment.

"Mrs. Halliburton is the widow of Bonnie B. Halliburton, who was killed in Gilmer in March, 1944, while loading crossties. The industrial Accident Board of the State of Texas ruled in July, 1944, that the late Mr. Halliburton was an employee of Kirby Lumber Co. of Center at the time of his death and that Mrs. Hallibur-

ton was to receive an award of damages to be paid by Texas Indemnity and Insurance Company.

"In August, 1944, Texas Indemnity Insurance Company filed notice that it was unwilling to abide by the ruling of the Industrial Accident Board and would not pay the award to Mrs. Halliburton.

"The case is expected to continue through Friday."

The objectionable parts of the newspaper article which are urged by appellant are those relating to the action of the Industrial Accident Board and the unwillingness on the part of appellant to abide by such action and to pay the award to Mrs. Halliburton, as set forth in the third and fourth paragraphs of the quoted article. From the evidence introduced on the motion for new trial it is shown that four jurors read the article at different times and during recesses of the court, without concert of action among them. The evidence shows conclusively that neither the article as a whole nor any facts set forth therein were discussed or mentioned in the jury room during deliberation. None of counsel on either side had anything to do with publishing the story or putting it in the hands of jurors. None of them furnished the newspaper or its reporter with the facts therein stated, or knew such article was to be published until they saw it in the newspaper. On the day the newspaper story was first read by any of the jurors, and after it had been so read by at least one or two of them, the court instructed the jury substantially as follows: "Do not communicate with any person regarding this case or any of the facts in it, neither by radio, newspaper, or any other way. Do not permit anyone to discuss it with you or obtain any other information from any source until you are discharged. Do not consider anything you may hear at any time or place, or that you may see or read, unless you see and read it from this witness stand. Unless you get information from this witness stand, totally disregard it, it has no bearing on this case and you must not consider it."

The trial and arguments having been concluded the next day, the jury deliberated for about an hour, when, at the request of two of the jurors who had read the newspaper article, the jury returned to the courtroom and asked the court if they might hear again the testimony of R. S. (Smith) Sanders. Accordingly, his testimony or so much of it as the jurors desired, was read to them without objection. Up to that time neither of the two jurors had been willing to agree on a verdict. The witness Sanders was an agent of Kirby Lumber Corporation who had made the contract on behalf of his company with B. B. Halliburton. His testimony was replete with details of the business of loading ties, and of the manner in which Halliburton did it. Numerous facts were testified to by him from which the jury might draw the inference that Halliburton was an employee or that he was an independent contractor. After the Sanders testimony was read, the jury returned to their room for further deliberation and in a short time, or "a few minutes" returned their verdict.

■ The question at issue falls within the purview of Rule 327, Tex.Rules Civ. Proc., and cases decided thereunder, said Rule reading as follows: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

To authorize the granting of a new trial under the provisions of the foregoing rule, an act relied upon must be shown to be material, and that it reasonably appears that injury to the complaining party probably occurred. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Hou-

ston v. Quinones, 142 Tex. 282, 177 S.W. 2d 259. The burden of proof on all issues is upon the party asserting injury. Both the trial and appellate courts must view the matter in the light of the whole record, that is, on evidence heard on the motion for new trial, and on any and all evidence on the main trial. Rule 327, and cases cited, supra. Additional authorities may be found in Vol. 7, Tex.Jur.Supp., pp. 581, 582, Sec. 51a.

Appellant asserts, and we agree, that it is immaterial whether the reading of the newspaper with facts therein detailed be called "misconduct," or a "communication made to the jury", or "other testimony"; since the same rule and principles of law are applicable to the different phases of the Rule.

Section 5 of the Act, and the decisions thereunder, forbid proceedings had before the Board from being used as evidence before the jury, as well as any reference thereto in discussing the case before that body. Commercial Standard Insurance Co. v. McGee, Tex.Civ.App., 40 S.W.2d 1105. The courts have zealously guarded the rights of parties by reversing numerous cases where that rule has been violated. In practically all such cases reversals have been due to actions of the trial courts in admitting evidence of the award of the Board, or because of statements of counsel before the jury in open court. We agree that newspaper articles discussing cases on trial should not be read by jurors as far as this can be controlled. Prior to the adoption of Rule 327 the appellate court reversed if it had a reasonable doubt as to injury. That has been changed by the adoption of Rule 327. Barrington v. Duncan, supra. In Ft. Worth & D. C. Ry. Co. v. Hays, 62 Tex. Civ.App., 369, 131 S.W. 416, 418, error refused, a newspaper article which was read by jurors did not discuss the merits of the case, none of the counsel knew of or had anything to do with publication of the article, and the court admonished the jury not to consider or be influenced by anything except evidence and the court's charge. No reversal resulted, the opinion stating, "The mere fact that some of

the jurors knew the amount of the former verdict would not in itself and alone disqualify them from being jurors in the first instance". See Copeland v. Wabash Ry. Co., 175 Mo. 650, 75 S.W. 106, 114, and cases there cited.

In Commercial Standard Ins. Co. v. McGee, supra, and City of Pampa v. Todd, Tex.Com.App., 59 S.W.2d 114, both cited by appellant, the decisions had to do with statements made by counsel in arguments before the jury, in open court, during the trial. In the City of Pampa case Judge Leddy cites a number of cases, in each of which the objectionable information of results of previous trials was given the jury by counsel during argument. In none of them did information come by way of newspapers. The decisions in those cases, and the cases cited by them, must be construed in the light of the facts therein stated.

In Federal Underwriters Exchange v. Bickham, 138 Tex. 128, 157 S.W.2d 356, it was held not to be error for counsel for claimant to tell the jurors that "This suit was brought by Federal Underwriters Exchange to set aside an award made by the Industrial Accident Board." In ruling on this, Chief Justice Alexander said, "It will be noted, however, that while the statement here complained of did disclose that the suit had been brought by the insurance company to set aside the award of the Industrial Accident Board, it did not disclose what the award was." The language quoted can mean but one thing, namely, that the attorney did not state the *amount* of the award. He expressly told the jurors an award had been made. Since the suit was brought by the insurance company to set aside the award so made, the jurors were thus informed that the award of the Board was in favor of the claimant and against the insurance company, in other words, that the Industrial Accident Board had previously made an award of liability against the insurance company which that company was unwilling to pay. The amount of the award and how it should be paid were the only facts not disclosed by the statement. If it was not reversible error for an at-

torney in open court to make the statement discussed, it could hardly have been more so if one or more jurors had read such facts in a newspaper after impanelment. Burchill v. Hermsmeyer, Tex.Civ.App., 262 S.W. 511, was reversed because the newspaper article read by jurors contained comments on the issues of the case then on trial and gave the newspaper's conception of the case. That condition does not exist here.

We think it significant that two of the jurors who read the article had not agreed on a verdict until after they had heard the Sanders testimony read to them. Had they been influenced by the article to decide the case against appellant it seems a reasonable conclusion that they would have manifested such desire before the reading of the Sanders testimony. We can scarcely escape the conclusion that they had misgivings about what their verdict should be until after their memories were refreshed by that testimony. A third juror testified that he understood from the newspaper article that "the court or whoever it was that passed on the case before, had held that Halliburton was an independent contractor." Another juror read the newspaper at noon on Thursday, but he did not remember whether he read this article at all, thus indicating that, at least to this juror, the article was not impressive if he read it. Still another juror testified that he did not read the newspaper article during the trial and, although he sat throughout the trial and joined in returning a verdict, he stated that he did not know whether he had read the article since the trial. Evidently, as to him, if he read it, it was not impressive.

These facts would seem to negative the contention of appellant that the jury was influenced in any way by the newspaper story, and it is our belief that no injury is shown to have resulted to appellant from the facts found in the record, and this contention is overruled.

Appellant presents several points of error on argument of appellees' counsel to the jury. In each case it is claimed that the argument was so inflammatory and prejudicial that it could not be cured by instruction. Objections to argument raised in Points 11 and 13 were overruled, but were sustained in every other instance and the jury was instructed not to consider the argument for any purpose.

Point 10 raises what to our minds is the most serious question in connection with these points on argument. Counsel for appellant had argued that one of the factual circumstances indicating an independent contractor rather than an employee relationship was the fact that the two Halliburtons were business partners, his argument being as follows:

"There are some other features of this thing that it seems to me that render it impossible for Bonnie Halliburton to have been an employee. How can you make a partnership your employee? * * * Now, you gentlemen know you can't go to any partnership in this town and hire the partnership as your employee. It just can't be done. * * * You don't hire business partnerships for employees."

Counsel for appellees replied to the foregoing argument of appellant's counsel in the following language: "Mr. Cox says you can't employ a partnership. Now listen, gentlemen, I am sure his Honor sitting on the bench knows a few things, and if Mr. Cox's argument was correct in all in that instance and in many other instances, the court would have instructed the gentlemen of the jury something like this: Gentlemen of the Jury, you are instructed by the Court in this case to return a verdict in favor of the insurance company."

Arguments of this nature are exceedingly dangerous and should never be indulged in. However, after a full and very serious consideration, and in view of all the facts in the case and the instruction immediately given to the jury not to consider those remarks we have reached the conclusion that the error, if any, was invited and was cured by the instruction. The argument of Mr. Cox amounted to the giving of testimony and stated conclusions of law not involved in the case and not covered by the charge. In so doing he, in effect, called upon the jury to

witness the correctness of his argument. "You know you can't go to any partnership in this town and hire the partnership as your employee. * * * You don't hire business partnerships," etc. The remarks of appellees' counsel, while treading on dangerous ground, was in response to such unauthorized argument. Marcus v. Huguley, Tex.Civ.App., 37 S.W.2d 1100, error dism.; Lowrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739, 106 S.W.2d 266; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855.

We have carefully considered each of the other points of error and have concluded that none of them are sufficient to justify a reversal. The argument challenged under Point 8 was in reply to facts discussed by appellant's counsel and the remarks challenged were in no way derogatory of the witness to whom they referred. The argument presented in Point 9 was not intended by appellees' counsel to apply to any person but was an expression of a conclusion of counsel to the situation developed by witness Keig's testimony. Appellant does not inform us of the construction placed by it upon the remarks of appellant's counsel as set forth in Point 11, and the remark itself is not placed in a setting that makes it very clear. We fail to see where the trial court was in error in his ruling upon the objection.

In Point 12 we find that the remark objected to was the conclusion of appellees' counsel from evidence found in the record and was in reply to conclusions that appellant's counsel expressed in the same connection. We do not agree with the assertion made under Point 13 that the statement challenged was an appeal to the sympathy of the jury. What counsel had to say about B. B. Halliburton was supported by the evidence.

In connection with each of the foregoing objections to argument appellant's counsel also made motions to declare a mistrial. The motion in each instance was overruled and in doing so we find no error.

By Point 14 appellant urges that even though the trial court may have ruled correctly on the individual objections and motions to which we have referred, yet the entire argument of appellees' counsel, taken as a whole, was so inflammatory and prejudicial that it unfairly influenced the jury in reaching its verdict. We are unable to agree with appellant, and its contention is respectfully overruled.

Finding no error in the judgment sufficient in our opinion to justify a reversal, the judgment of the district court is affirmed.