IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 26918-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IGOR V. SAMOLYUK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Igor V. Samolyuk appeals his 2007 second degree murder conviction for killing his wife, Yana Samolyuk. He contends the trial court erred by (1) denying his motion for a new jury panel based on possible media exposure, (2) violating his public trial rights, and (3) admitting prior assault evidence. This court stayed his appeal pending decisions by our Supreme Court in a series of public trial cases. *See In re Pers. Restraint of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012); *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012); *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012); *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009); *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009). Finding no error, we affirm.

FACTS

The Samolyuks married in 2005. They had a tumultuous marriage. In January 2006, Mr. Samolyuk suffered severe head injuries in an automobile accident. Thereafter, he became forgetful, irritable, irrational, and withdrawn. The parties' marriage deteriorated further. In late June 2007, Mr. Samolyuk asked his pregnant wife to leave the family home. The couple's daughter was born soon after.

On the night of July 9, 2007, the Samolyuks agreed to meet at a Starbucks so Mrs. Samolyuk could retrieve some personal items. Mr. Samolyuk became angry with Mrs. Samolyuk and drove her to the Finley shooting range. The next morning, family members responded to Mr. Samolyuk's distress calls and there found Mrs. Samolyuk unconscious and Mr. Samolyuk with cuts to his wrist. Mrs. Samolyuk died as a result of bleeding to death from multiple stab wounds inflicted by Mr. Samolyuk.

The State charged Mr. Samolyuk with second degree murder, alternatively, felony murder based upon first or second degree assault. The State alleged three aggravating factors: (1) the current offense manifested deliberate cruelty to the victim, (2) the current offense involved domestic violence, and (3) the current offense involved a destructive and foreseeable impact on the couple's infant child. Mr. Samolyuk's defense theory was diminished capacity as a result of his head injury.

Before trial, the State asked to admit evidence of three prior assaults: (1) in July 2005, Mrs. Samolyuk called her mother and said Mr. Samolyuk beat her, which Mr. Samolyuk admitted; (2) in October 2005, Mr. Samolyuk pleaded guilty to disorderly

conduct, down from fourth degree assault following another fight; and (3) in November 2005, Mr. Samolyuk grabbed Mrs. Samolyuk around the neck outside her parents' apartment in the presence of her parents. Over Mr. Samolyuk's objection, the court admitted evidence of each incident, finding the State had established by a preponderance of the evidence that the acts occurred, that they were admissible to show intent and motive, and that the probative value outweighed any prejudice. The court additionally found the incidents were admissible to prove the aggravating factor of domestic violence.

During jury selection, a bailiff found two copies of the Tri-City Herald in one of the jury rooms where the jury pool waited. An article titled, "Jury selection for murder trial continues today" appeared on page B-1. Clerk's Papers (CP) at 1206. Mr. Samolyuk moved to strike the jury panel and impanel a new jury or, alternatively, recall struck jurors and inquire regarding juror misconduct. The court decided to individually interview each jury panel member in the apparently open courtroom, apart from the other jurors. Mr. Samolyuk mistakenly argues the jurors were interviewed in a jury room. Five jurors admitted they saw the newspaper in the jury room. Juror One reported she did the puzzles, but did not read the paper. Juror Two said he did the Soduko puzzle and scanned the front-page headlines. Juror Four saw the paper and completed the jumbo puzzle. Juror Eight admitted he read an article in the paper relating to the local irrigation district. Juror Eleven saw the paper, and saw other jurors looking at the ads, "but not reading the news." Report of Proceedings (RP) at 422. The

3

court found none of the jurors saw the article relating to the trial, and denied Mr.

Samolyuk's motion to strike the jury panel.

The jury found Mr. Samolyuk guilty of second degree murder and found all three

aggravating factors. The court imposed a 250-month exceptional sentence. Mr.

Samolyuk appealed.

## ANALYSIS

### A. Jury Bias

The issue is whether the trial court erred by abusing its discretion in denying Mr.

Samolyuk's request for a new jury panel. He contends the court should have analyzed

the newspaper article on the record for its prejudicial effect and inadequately questioned

the jury about their knowledge of the article.

Under the Sixth Amendment to the United States Constitution as well as article I,

section 22 of the Washington State Constitution, "'a defendant is guaranteed the right to

a fair and impartial jury.'" *State v. Roberts*, 142 Wn.2d 471, 517, 14 P.3d 713 (2000)

(quoting *State v. Brett*, 126 Wn.2d 136, 157, 892 P.2d 29 (1995)). We review a trial

court's denial of a motion to strike a prospective jury panel for abuse of discretion.

*Roberts*, 142 Wn.2d at 518-19. Discretion is abused when it is exercised on untenable

grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482

P.2d 775 (1971).

A court should sustain a challenge to the jury panel solely when confronted with

"a material departure from the procedures prescribed by law for their selection." CrR

4

6.4(a). The court has discretion in conducting jury voir dire to achieve every reasonable protection for a defendant. *State v. Herman*, 93 Wn.2d 590, 593, 611 P.2d 748 (1980). The defendant's right to a fair and impartial jury is the sole limit on the trial court's exercise of discretion. *State v. Frederiksen*, 40 Wn. App. 749, 700 P.2d 365 (1985).

A jury's consideration of novel or extrinsic evidence constitutes misconduct and may be grounds for a new trial if the defendant is able to show that the misconduct likely affected the verdict. *State v. Balisok*, 123 Wn.2d 114, 118, 866 P.2d 301 (1994). But, we presume jurors follow the instructions the trial court gives them. *State v. Robinson*, 146 Wn. App. 471, 483, 191 P.3d 906 (2008). Here, some of the jurors saw the newspapers in the jury room early in the selection process, before the court admonished them not to view newspapers. When questioned about the newspapers, none of the jurors saw the critical article.

Mr. Samolyuk argues the court should have taken the additional step of analyzing the article's prejudicial effect based on *State v. Adamo*, 128 Wash. 419, 423, 223 P. 9 (1924). In *Adamo*, a jury member filed an affidavit at the conclusion of trial, stating that he saw in the courthouse a newspaper clipping relating to Mr. Adamo during trial. *Id.* at 420. The trial court denied Mr. Adamo's request for a new trial. *Id.* at 423-24. The court noted that even if the jury read the whole article no influence over the verdict was shown. *Id.* at 423. Here no influence could be possible because no jurors saw the article.

5

Mr. Samolyuk next argues the court insufficiently inquired into the jurors' exposure to the newspapers. The court and counsel discussed the questioning before voir dire. The questions posed were acceptable to defense counsel who agreed if the jurors confirm that none of them looked at the article, "I think that would put this issue to rest." RP at 361. Additionally, the court permitted counsel to ask questions at the conclusion of the court's questioning. To now complain that the court's questioning was improper violates the invited error doctrine. *See State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990) (the invited error doctrine precludes a party from setting up an error at trial and then complaining of it on appeal.). Under these circumstances, the court was not required to inquire further. Given all, we conclude the trial court did not abuse its discretion in denying Mr. Samolyuk's request for a new jury.

## B. Public Trial

The issue is whether Mr. Samolyuk was denied his constitutional right to a public trial. He contends interviewing the jury members individually violated his rights. Under the cases analyzed below, we disagree.

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." Similarly, article I, section 22 of the Washington Constitution guarantees, "In criminal prosecutions the accused shall have the right . . . to have a . . . public trial." The public trial right is not absolute, but it is strictly guarded to assure proceedings occur outside the public courtroom solely in the most unusual circumstances. *State v. Strode*, 167 Wn.2d 222,

226, 217 P.3d 310 (2009) (citing *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d

825 (2006)). "Whether a defendant's constitutional right to a public trial has been

violated is a question of law, subject to a de novo review on direct appeal." *Strode*, 167

Wn.2d at 225.

Our Supreme Court has articulated guidelines every trial court must follow before

closing a courtroom to the public. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906

P.2d 325 (1995). Those criteria are:

> 1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> 4. The court must weigh the competing interests of the proponent of closure and the public.
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Bone-Club*, 128 Wn.2d at 258-59 (quoting *Allied Daily Newspapers v. Eikenberry*, 121

Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

In *Strode*, a sex-crime case, jury members were brought into the judge's

chambers for questioning regarding sensitive topics, with solely the trial judge,

prosecuting attorney, defense counsel, and the defendant present. 167 Wn.2d at 224.

The purpose was to protect the jurors' privacy interests. Our Supreme Court held that

7

this amounted to a closure and, because the court did not first conduct a *Bone-Club* analysis, the defendant's right to a public trial was violated. *Id.* at 231. In *Wise* and *Paumier*, the court similarly ruled. *Wise*, 176 Wn.2d at 15; *Paumier*, 176 Wn.2d at 37. The court, however, limited the extent of the right to a public trial in *Sublett*, by holding that a *Bone-Club* analysis is not required when a judge answers a juror question in chambers with counsel present. 176 Wn.2d at 135.

In *Momah*, another sex-crime case, the trial court, on the recommendation of defense counsel, questioned several jurors privately to protect the defendant's right to a fair trial. 167 Wn.2d at 145-46. The court noted, "due to the publicity of Momah's case, the defense and the trial court had legitimate concerns about biased jurors or those with prior knowledge of Momah's case." *Id.* at 156. The court held that a partial closure of voir dire to safeguard the defendant's right to a fair trial was not a structural error and affirmed the defendant's convictions. *Id.* at 151-52.

Here, a bailiff found copies of the Tri-City Herald with a trial-related article on the front page of the local section in a jury room where the jury pool waited. Mr. Samolyuk requested to inquire regarding juror misconduct. The court decided to individually interview members of the jury panel. The questioning apparently took place in the courtroom.[1] Five jurors admitted they saw the newspaper in the jury room. After its inquiry, the court denied the motion to strike, finding none of the jurors saw the article relating to the trial.

---

[1] While the record is unclear where the questioning occurred, the original prosecutor filed a letter with this court, stating that the questioning was in the courtroom.

Our case is similar to *Momah*. The purpose of the questioning was to protect Mr. Samolyuk's fair trial rights. Defense counsel acquiesced to the individual jury questioning. Thus, any closure here was not a structural error. The closure occurred to protect Mr. Samolyuk's rights and did not prejudice him. Both the defense and the trial court had legitimate concerns about biased jurors. Thus, the underlying facts and impact of the closure here are significantly different from those cases where our Supreme Court found public trial errors. Given all, we conclude reversal and remand of this case is unwarranted. Reversal of Mr. Samolyuk's conviction and remand of his case is not the remedy under the circumstances presented here.

## C. Prior Assault Evidence

The issue is whether the trial court erred in admitting evidence under ER 404(b) relating to Mr. Samolyuk's prior assaults against Mrs. Samolyuk. Mr. Samolyuk contends the court failed to analyze all four factors required to be reviewed prior to admittance and the evidence lacked probative value.

We review admission of ER 404(b) evidence for abuse of discretion. *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984 (2001). Before a court admits ER 404(b) evidence, it must, on the record: (1) find by a preponderance of the evidence that the prior act or misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

Here, the court thoughtfully analyzed each incident. It found the July 2005 assault was established by a preponderance of evidence, it was admissible to establish intent, it was relevant because intent was "specifically going to be an issue for this jury" and the "probative value outweighs any prejudicial impact." RP at 379. The court found the October 2005 assault was established by a preponderance of evidence. The court further found, "And, clearly, what I believe the defense is raising is the whole issue of intent and . . . it's going to be admissible for intent purposes as well as potentially motive purposes." RP at 388. The court found the November 2005 assault occurred, and regarding its probative value: "From this Court's perspective, once again, this evidence is important on the issues of the defendant's motive and intent. And not only that but, of course, as has been pointed out previously by the State, of course, the State has further alleged an aggravating circumstance allegation which involves that the current offense involved domestic violence." RP at 508. The court found, "[I]n balancing the probative value versus the prejudicial effect . . . the probative value outweighs the prejudice." RP at 508-09.

Given the above, we conclude the court properly reviewed the *Thang* factors on the record. Considering intent was the central issue in the case, the trial court did not abuse its discretion in admitting evidence of the three prior assaults. Thus, our case is unlike *State v. Powell*, 126 Wn.2d 244, 262, 893 P.2d 615 (1995), holding prior misconduct was improperly admitted because intent was not a disputed issue.

10

*State v. Hernandez*, 99 Wn. App. 312, 997 P.2d 923 (1999) is instructive. There, the defendant was charged with murdering his girl friend. The court upheld the admission of evidence regarding the girl friend's numerous prior bruises and strained relationship with the defendant. *Id.* at 322. The court held that evidence of misconduct is generally admissible to show intent and absence of accident when the defendant admits doing the act, but claims that he did not have the requisite state of mind to commit the charged offense. *Id.* Mr. Samolyuk does not contest he stabbed and killed Mrs. Samolyuk. Instead, he argues that because of the injuries he received in January 2006, he did not have the ability to intend his acts. The three prior assaults, all of which occurred before the injuries, were relevant to show he had intent to harm Mrs. Samolyuk. And, they were relevant to the aggravating factor of whether the offense, "involved domestic violence." CP at 1249.

Mr. Samolyuk argues the court erred in failing to bifurcate the trial from the aggravating factors proceeding. However, he fails to assign error to this issue; therefore, we decline review. *See* RAP 10.3(a)(4) (Appellant must provide, "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."). Moreover, he did not request bifurcation below, thus waiving the issue here.

No. 26918-3-III
*State v. Samolyuk*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.

WE CONCUR:

Korsmo, C.J.                          Siddoway, J.